MARY JOHNSON NORMAN, CAROL NASH NORMAN HARE, RALPH W. NORMAN, JR., RALPH W. NORMAN, III, RALPH W. NORMAN, JR., AS GUARDIAN AD LITEM FOR CAROLINE E. NORMAN, RALPH W. NORMAN, JR., AS GUARDIAN AD LITEM FOR ANNE R. NORMAN, RALPH W. NORMAN, JR., AS GUARDIAN AD LITEM FOR MARY CATHERINE NORMAN, DAVID F. NORMAN, DAVID F. NORMAN, AS GUARDIAN AD LITEM FOR WALTER L. NORMAN, DAVID F. NORMAN, AS GUARDIAN AD LITEM FOR LAUREN T. NORMAN, MARY SUSAN NORMAN DUNCAN, MARY SUSAN NORMAN DUNCAN AS GUARDIAN AD LITEM FOR WILLIAM D. DUNCAN, MARY SUSAN NORMAN DUNCAN AS GUARDIAN AD LITEM FOR JOSHUA W. DUNCAN, MARY SUSAN NORMAN DUNCAN AS GUARDIAN AD LITEM FOR MATTHEW C. DUNCAN, GERALDINE JOHNSON CASHWELL, J. STEVEN CASHWELL, AND ELIZABETH ANN CASHWELL GASKILL, PLAINTIFFS-APPELLANTS V. NASH JOHNSON & SONS' FARMS, INC., HOUSE OF RAEFORD FARMS, INC., HOUSE OF RAEFORD FARMS OF MICHIGAN, INC., JOHNSON BREEDERS, INC., E. MARVIN JOHNSON, ROBERT COWAN JOHNSON, MARY ANNA JOHNSON CARR PEAK, DENNIS N. BEASLEY, DIANE CAROL JOHNSON BEASLEY, PRIVATEER FARMS, INC., AND JOHNSON INVESTMENT PARTNERSHIP, DEFENDANTS-APPELLEES

No. COA99-857

(Filed 7 November 2000)

**1. Corporations— derivative action—family-owned, closely held company—individual claims**

In an action by minority shareholders in a family-owned closely held corporation seeking an accounting and constructive trust where plaintiffs' claims were dismissed for failure to state a cause of action, the trial court erred by concluding that plaintiffs' claims were purely derivative in nature. Under the circumstances of this case, plaintiff minority shareholders may maintain their individual actions against the majority shareholders based upon their allegations of wrongdoing, including allegations of diversion of corporate assets and opportunities. Furthermore, the allegations of the amended complaint support the view that the business defendants are not third parties, but merely conduits and tools of the individual defendants. Even if the rationale of the cases involving third-party defendants applies, plaintiffs have alleged sufficient facts to demonstrate that they satisfy the requirements.

**2. Corporations— derivative action—demand requirement—futility exception**

The trial court erred by granting a Rule 12(b)(6) motion to dismiss derivative claims by the minority shareholders in a family-owned closely held corporation based upon a failure to allege a demand that the directors act. Although the enactment of

N.C.G.S. § 55-7-42 eliminated the futility exception to the demand requirement, that statute does not explicitly require that the complaint in a derivative proceeding state how the demand requirement was met. In the absence of a clear legislative mandate, Rule 9(c) of the Rules of Civil Procedure provides that it is sufficient to aver generally that all conditions precedent have been performed or have occurred and it appears that plaintiffs complied with that rule. Moreover, N.C.G.S. § 55-7-42 applies only to derivative proceedings based on actions which occurred on or after 1 October 1995 and the failure to make an adequate pre-litigation demand would not bar claims based on actions prior to that date.

### 3. Conversion— derivative action—not applicable to real estate or business opportunities

The trial court did not err by dismissing a derivative claim for conversion against two business defendants in an action by the minority shareholders in a closely held family corporation where there was no specific allegation that either defendant made an unauthorized exercise of ownership rights over any of the personal property of the company. In North Carolina, only goods and personal property are properly the subjects of a claim for conversion; conversion does not apply to real property or intangible interests such as business opportunities.

### 4. Trusts— constructive—claim sufficiently stated

A complaint alleged facts sufficient to state a derivative claim by minority shareholders for a constructive trust and an accounting where there were numerous allegations of breach of fiduciary duty and enrichment by all but two business defendants, JIP and Privateer, and the trial court erred by dismissing the cause of action as to the other defendants.

### 5. Conspiracy— civil—statement of claim—alternate pleading

A complaint alleged facts sufficient to state a derivative claim by minority shareholders for civil conspiracy where it was replete with allegations of conspiracy, acts in furtherance of the alleged conspiracy, and injury to the company and to plaintiffs. Although defendants contend that plaintiffs could not rely on the same facts for conspiracy and the underlying claim, plaintiffs may plead alternate theories of recovery.

NORMAN v. NASH JOHNSON & SONS' FARMS, INC.

[140 N.C. App. 390 (2000)]

**6. Unfair Trade Practices— statement of claim—use of business opportunities**

The trial court erred by dismissing a derivative claim by minority shareholders for unfair and deceptive trade practices as failing to state a claim where plaintiffs alleged numerous breaches of fiduciary duty and, furthermore, that the business defendants were unfairly competing with the company through the use of assets and business opportunities which belonged to the company, causing injury and monetary loss to the company.

**7. Unjust enrichment— derivative action—statement of claim**

A complaint alleged facts sufficient to state derivative claims by minority shareholders for unjust enrichment where plaintiffs alleged that defendants breached fiduciary duties and received benefits for which they had not paid. Although labeled quantum meruit, the allegations were sufficient for unjust enrichment and the trial court erred by dismissing the claim.

Judge GREENE concurring in part and dissenting in part.

Appeal by plaintiffs from order entered 30 November 1998 by Judge Bradford L. Tillery in New Hanover County Superior Court. Heard in the Court of Appeals 9 May 2000.

Plaintiffs instituted this action on 28 August 1996, seeking the declaration of a constructive trust and an accounting; alleging causes of action for breach of fiduciary duty, conversion, unfair and deceptive trade practices, and *quantum meruit*; and seeking damages from defendants. Plaintiffs allege that the individual defendant majority shareholders have breached their fiduciary duty to plaintiff minority shareholders by using their control of Nash Johnson & Sons' Farms, Inc. (the Company), and their control of, and interests in, the cooperative, corporate, and partnership defendants to divert assets, benefits and corporate opportunities from the Company to themselves. Plaintiffs alleged their claims against all defendants both individually and derivatively on behalf of the Company. Defendants pled a number of defenses to plaintiffs' claims in their answer and moved to dismiss the complaint. The trial court granted defendants' motion to dismiss plaintiffs' derivative claims on the grounds that plaintiffs failed to verify their complaint in accordance with Rule 23(b) of the North Carolina Rules of Civil Procedure, which requires a shareholder bringing a derivative claim on behalf of a corporation to verify the

complaint, but allowed plaintiffs' motion to file an amended verified complaint.

Plaintiffs then filed an amended verified complaint adding Privateer Farms, Inc. (Privateer), and Johnson Investment Partnership (JIP) as parties and alleging a claim for civil conspiracy against all defendants. Defendants filed an answer which denied plaintiffs' claims, alleged several defenses, and moved to dismiss the action. The trial court granted defendants' motions to dismiss with prejudice and plaintiffs appealed.

The factual allegations of plaintiffs' complaint may be summarized as follows. The Company is a family owned poultry business in Duplin County. The plaintiffs and individual defendants are related to founder Nash Johnson by either blood or marriage. Plaintiffs Mary Johnson Norman and Geraldine Johnson Cashwell are Nash Johnson's daughters; the remaining plaintiffs are the children and grandchildren of Norman and Cashwell. Plaintiffs own a total of 713.86 shares in the Company, and thus are minority shareholders. Defendant E. Marvin Johnson is the son of Nash Johnson. Marvin Johnson is and has been the President, Chief Executive Officer, and a director of the Company. Marvin Johnson's son, defendant Robert Cowan Johnson, was and is an officer and director of the Company. The remaining individual defendants are the children and the son-in-law of Marvin Johnson. Collectively, the individual defendants own more than 2,200 shares and control a majority of the outstanding shares in the Company. At all relevant times, the individual defendants have controlled the Board of Directors of the Company. The grandchildren of Marvin Johnson, who own about 664 shares of the Company, are not parties to this litigation.

The remaining defendants are businesses with which the Company has business dealings. House of Raeford Farms, Inc. (Raeford Farms), is a North Carolina cooperative with its principal place of business in Hoke County; the members of the Raeford Farms cooperative are the Company and defendants Johnson Breeders, Inc. (Johnson Breeders). Marvin Johnson is the President of Raeford Farms. House of Raeford Farms of Michigan, Inc. (Raeford Farms of Michigan) is a Michigan corporation with its principal place of business in Athens, Michigan; its shareholders are the individual defendants who are the children of Marvin Johnson. Johnson Breeders, Inc. (Johnson Breeders), is a North Carolina corporation with its principal place of business in Duplin County; its shareholders are the defendants who are the children of Marvin Johnson. Privateer is a

North Carolina corporation with its principal place of business in Cumberland County, North Carolina; Marvin Johnson is a shareholder in said corporation. Johnson Investment Partnership (JIP) is a North Carolina partnership; the partners are Marvin Johnson and his son, defendant Robert C. Johnson. The cooperative, corporate and partnership defendants are sometimes referred to below as "business defendants." Other relevant facts are set out in the discussion below.

*James, McElroy & Diehl, P.A., by G. Russell Kornegay, III, J. Mitchell Aberman, Katherine Line Thompson Kelly and Ann L. Hester, for plaintiff appellants.*

*Jordan Price Wall Gray Jones & Carlton, PLLC, by Henry W. Jones, Jr., Paul T. Flick, C. Marshall Lindsay and Emily W. Eisele, for Nash Johnson & Sons' Farms, Inc., House of Raeford Farms, Inc., House of Raeford Farms of Michigan, Inc., Johnson Breeders, Inc., E. Marvin Johnson, Robert Cowan Johnson, Mary Anna Johnson Carr Peak, Dennis N. Beasley and Diane Carol Johnson defendant appellees.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by James T. Williams, Jr., James C. Adams, II, and Derek J. Allen, for Johnson Investment Partnership defendant appellee.*

HORTON, Judge.

Plaintiffs appeal from the Rule 12(b)6) dismissal of their claims by the trial court. In reviewing the action of the trial court, we are to liberally construe the complaint and determine whether, as a matter of law, the allegations of the complaint, taken as true, are sufficient to state some legally recognized claim or claims upon which relief may be granted to plaintiffs. *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). While the well-pled allegations of the complaint are taken as true, conclusions of law or "unwarranted deductions of fact" are not deemed admitted. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970).

Plaintiffs contend the trial court erred in (I) concluding that all allegations of wrongdoing in plaintiffs' amended complaint are derivative, not individual, in nature; (II) dismissing plaintiffs' derivative claims for failure to comply with statutory requirements; (III) concluding that some of plaintiffs' causes of action fail to state a claim; and (IV) denying plaintiffs' motion to amend their complaint.

NORMAN v. NASH JOHNSON & SONS' FARMS, INC.

[140 N.C. App. 390 (2000)]

I. Plaintiffs' Individual Claims

**[1]** Plaintiffs contend the trial court erred in concluding that allegations of wrongdoing in plaintiffs' first amended complaint are derivative, not individual, in nature. A "derivative proceeding" is a civil action brought by a shareholder "in the right of" a corporation, N.C. Gen. Stat. § 55-7-40.1 (1999), while an individual action is one a shareholder brings to enforce a right which belongs to him personally. *See Way v. Sea Food Co.*, 184 N.C. 171, 174, 113 S.E. 781, 782 (1922). Russell M. Robinson, II, *Robinson On North Carolina Corporation Law* § 17-2(a) at 333 (5th ed. 1995) (the distinction is drawn in terms of whose right is being enforced). It is not always easy to distinguish between a right of the corporation and a right belonging to an individual shareholder. "[T]he same wrongful conduct can give rise to both derivative and direct [individual] claims, for which courts have sometimes allowed shareholders to maintain derivative and direct actions simultaneously." *Id.* (footnotes omitted).

Here, plaintiffs alleged both individual and derivative claims for constructive trust and an accounting, breach of fiduciary duty, conversion, civil conspiracy, unfair and deceptive trade practices, and *quantum meruit.* The trial court dismissed all of plaintiffs' individual claims for the stated reasons that "[a]ll allegations of wrongdoing alleged in the Plaintiffs' Complaint and First Amended Complaint are derivative in nature and fail to fall within recognized exceptions to the general rule as stated in *Barger v. McCoy, Hilliard* [sic] *& Parks*, 346 N.C. 650, [488 S.E.2d 215 (1997)]." Although *Barger* states the North Carolina rule with regard to circumstances under which an individual shareholder of a corporation may bring an action against a *third party* whose conduct has given rise to a cause of action in favor of the corporation, it does not address the issue raised in this case: under what circumstances may minority shareholders in a closely held corporation properly assert individual claims on their own behalf in an action against the majority shareholders who control the corporation?

As a general rule, shareholders have no right to bring actions "in their [individual] name[s] to enforce causes of action accruing to the corporation[,]" *Fulton v. Talbert*, 255 N.C. 183, 185, 120 S.E.2d 410, 412 (1961), but must assert such claims derivatively on behalf of the corporation. *Robinson* § 17-2(a) at 333. A correct characterization of the shareholder's action as derivative or individual may be crucial, as there are certain mandatory procedural and pleading requirements for a derivative action. F.H. O'Neal & R. Thompson, *O'Neal's*

*Oppression of Minority Shareholders* § 7:07 (2d ed. 2000), p. 52. Some procedural restrictions proceed from concerns about prevention of a multiplicity of lawsuits and concern over "who should properly speak for the corporation." *Id.* Other restrictions arise from concerns that derivative actions will be misused by " 'self-selected advocate[s]' pursuing individual gain rather than the interests of the corporation or the shareholders as a group, bringing costly and potentially meritless 'strike suits.' " *Id.*

Thus, for example, a shareholder who brings a derivative action in North Carolina must show that he or she "[f]airly and adequately represents the interests of the corporation in enforcing the right of the corporation[,]" N.C. Gen. Stat. § 55-7-41 (1999), and may not commence the action until written demand on the corporation's directors has been made and the statutory period has elapsed. N.C. Gen. Stat. § 55-7-42 (1999). Further, the corporation may then determine by a majority vote of "independent" directors that maintenance of the derivative action "is not in the best interest of the corporation." N.C. Gen. Stat. § 55-7-44(a)(b)(1) (1999). "Independent" directors may include persons who have been nominated or elected by persons who are defendants in the derivative action, persons who are themselves defendants in the derivative action, and persons who approve of the act being challenged. N.C. Gen. Stat. § 55-7-44(c)(1)(2)(3) (1999). "If the corporation commences an inquiry into the allegations set forth in the demand or complaint, the court may stay a derivative proceeding for a period of time the court deems appropriate." N.C. Gen. Stat. § 55-7-43 (1999). Finally, the derivative suit may not be settled without the approval of the court. N.C. Gen. Stat. § 55-7-45(a) (1999). It is of obvious importance to the parties that the recovery in a derivative action goes to the corporation, not to the plaintiff personally. *Outen v. Mical*, 118 N.C. App. 263, 266, 454 S.E.2d 883, 885 (1995). Finally, the successful litigant in a derivative action may be awarded attorneys' fees by the court, N.C. Gen. Stat. § 55-7-46(1) (1999), while the plaintiff in an individual action bears his own fees. *See Miller v. Ruth's of North Carolina, Inc.*, 68 N.C. App. 40, 313 S.E.2d 849, *disc. review denied*, 311 N.C. 760, 321 S.E.2d 140 (1984). Thus, derivative litigation is obviously more unwieldy and inspires more litigation of ancillary issues than an individual action by plaintiff minority shareholders.

Prior to the enactment of our statutory scheme with regard to derivative proceedings, it is not always clear from our decisional law whether an action was instituted as an individual or derivative suit.

NORMAN v. NASH JOHNSON & SONS' FARMS, INC.

[140 N.C. App. 390 (2000)]

*Robinson* discusses a group of cases decided in 1896, which involved the insolvent Bank of Hanover, where our Supreme Court allowed depositors to sue the directors of the insolvent Bank both for publishing false statements about the Bank's financial condition which induced them to make deposits—apparently an individual cause of action—and for mismanagement which resulted in the insolvency—clearly a derivative cause of action. *Tate v. Bates*, 118 N.C. 287, 24 S.E. 482 (1896); *Solomon v. Bates*, 118 N.C. 311, 24 S.E. 478 (1896); and *Caldwell v. Bates*, 118 N.C. 323, 24 S.E. 481 (1896). *Robinson* § 17-2 at 335. The Supreme Court did not characterize the *Bates* actions as individual or derivative, although later cases arising from corporate insolvency clearly make the distinction. See, for example, *Douglass v. Dawson*, 190 N.C. 458, 130 S.E. 195 (1925) (where the bank allegedly became insolvent through mismanagement by the directors, the wrong was to the corporation; and an action against the directors was derivative in nature, requiring a demand on the receiver prior to bringing the action).

Both our statutory and case law recognize a number of instances in which a shareholder may bring an individual claim:

1. to enforce his right to inspect the corporate books and records;

2. to recover a dividend already declared, or any other amount actually due him from the corporation on his shares or otherwise;

3. to compel the declaration of dividends;

4. to compel an involuntary dissolution;

5. to enjoin an ultra vires act by the corporation;

6. to enforce preemptive rights, to recover for damage done directly to his ownership interest in the corporation, or to preserve the rights of his particular class of stock against a prejudicial reorganization;

7. to recover damages from an "insider" or other party who induced him to buy or sell shares in the corporation either by actual misrepresentations or by failing to disclose pertinent information about the corporate affairs in breach of a fiduciary obligation; and

8. to enforce an agreement among the shareholders.

*Robinson* § 17-2 at 335-36 (footnotes omitted). *See also* 2 F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Close Corporations*, § 8.16 (3d ed. 1998).

For more than a century, we have recognized the right of depositors in a bank to bring individual actions against officers and directors who induced them to make deposits in a bank by misrepresenting its financial condition, the losses being deemed to be peculiar to the plaintiffs as distinguished from the depositors in general. See *Coble v. Beall*, 130 N.C. 533, 537, 41 S.E. 793, 794 (1902), and the cases cited therein. Based on that same reasoning, our appellate courts allow shareholders to bring individual actions against third parties who induce them to make corporate investments which prove to be worthless. Thus, in *Howell v. Fisher*, 49 N.C. App. 488, 272 S.E.2d 19 (1980), *disc. review denied*, 302 N.C. 218, 277 S.E.2d 69 (1981), plaintiff shareholders were allowed to bring an individual action against defendants for negligently preparing a soil testing report which induced plaintiffs to invest in a corporation which had become insolvent. The *Howell* Court held that shareholders could "seek damages in their own right for negligent misrepresentations made to them before they were stockholders for the purpose of inducing their investment[,]" and the corporation was not a necessary party to the suit. *Id.* at 498, 272 S.E.2d at 26. *Accord, Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658-59, 488 S.E.2d 215, 219 (1997) ("[A] shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show [1] that the wrongdoer owed him a special duty or [2] that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself."). *Compare, Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 525 S.E.2d 441 (2000), where plaintiff limited partner was not permitted to maintain an individual action against third parties for alleged negligence, negligent misrepresentation, and breach of warranty, which induced their $16 million investment in another limited partnership, because plaintiff was already a member of the limited partnership and because "any misrepresentations were made not to [plaintiff] individually, but to the limited partnership as a whole." *Id.* at 337, 525 S.E.2d at 445.

Generally speaking, our decisions in *Howell* and *Barger* parallel the majority view among our sister states that a shareholder can maintain an individual action against a third party only if he can show

a special relationship with the wrongdoer and also show an injury peculiar to himself. During the last quarter of the Twentieth Century, however, there has been an "evolution" in the development of, and protection for, the rights of minority shareholders in closely held corporations. *Davis v. Hamm*, 300 S.C. 284, 288, 387 S.E.2d 676, 678 (S.C. App. 1989). The sheer scope of the problem nationally has led to some relaxation in the context of a closely held corporation of the traditional requirements for instituting individual actions. Dr. F. H. O'Neal, recognized as a national authority on the rights of minority shareholders, stated in 1987 that

> [u]nfair treatment of holders of minority interests in family companies and other closely held corporations by persons in control of those corporations is so widespread that it is a national business scandal. The amount of litigation growing out of minority shareholder oppression—actual, fancied or fabricated—has grown tremendously in recent years, and the flood of litigation shows no sign of abating.

F.H. O'Neal, *Oppression of Minority Shareholders: Protecting Minority Rights*," 35 Clev. St. L. Rev. 121 (1986-87). In order to devise a remedy for the "national business scandal," appellate courts in our sister states have focused on the fiduciary relationship between majority and minority shareholders in a closely held corporation, as well as the similarity of small closely held corporations to partnerships. *O'Neal & Thompson* § 7:08 at 58. See, for example, *Johnson v. Gilbert*, 127 Ariz. 410, 412, 621 P.2d 916, 918 (1980) (plaintiff 50% shareholders had standing to sue both derivatively and directly for specific performance, breach of fiduciary duty, and for an accounting, because the closely held corporation operated more as partners than in strict compliance with corporate form); *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 460 P.2d 464, 81 Cal. Rptr. 592 (1969) (minority shareholder allowed to bring suit on behalf of self and other similarly situated minority shareholders where defendant majority shareholders transferred controlling interest in closely held corporation to holding company, excluding minority shareholders from the transaction); *Yanow v. Teal Industries, Inc.*, 178 Conn. 262, 283, 422 A.2d 311, 322 (1979) (former minority shareholder in subsidiary corporation which was merged into parent corporation in "short-form" merger could bring individual claim against parent corporation and its officer based on allegations that defendants looted and dismantled subsidiary corporation, and thus deprived plaintiff of income and assets); *Steelman v. Mallory*, 110 Idaho 510, 513, 716 P.2d

1282, 1285 (1986) (one of three shareholders/directors allowed to file individual action against other two shareholders/directors for breach of fiduciary duty in management of small closely held corporation by trying to "squeeze him out"; court referred to relationship between shareholders as "similar to the relationship among partners"); *Barth v. Barth*, 659 N.E.2d 559, 562 (Ind. 1995) (adopting § 7.01(d) of the American Law Institute's Principles of Corporate Governance, and holding that, when a shareholder in a closely held corporation who alleges misuse of corporate assets sues the majority shareholder, the trial court may treat the action as a direct or individual action provided it will not lead to multiplicity of actions, harm the interests of creditors, or interfere with the fair distribution of recovery among interested persons); *Richards v. Bryan*, 19 Kan. App. 2d 950, 965, 879 P.2d 638, 647-48 (1994) (recognizing a new cause of action in Kansas for close corporation freeze-outs, and holding that oppressed minority shareholders may bring direct suit for breaches of fiduciary duty by majority shareholders, even though plaintiff's grievance is primarily based on damage to the corporation); *Webber v. Webber Oil Co.*, 495 A.2d 1215, 1225 (Me. 1985) (count of the complaint which alleged that defendant majority shareholders breached fiduciary duties to plaintiffs, particularly Mr. Webber, by reducing Mr. Webber's salary as treasurer and disproportionately reducing his dividend payments, stated an individual claim, separate from the accompanying derivative claim, although arising from the same factual matrix); *Horizon House-Microwave, Inc. v. Bazzy*, 21 Mass. App. Ct. 190, 196, 486 N.E.2d 70, 74 (1985) (to extent that gravamen of this action by minority shareholder was abuse of fiduciary duty by majority shareholder, it could be maintained as individual action); *Schumacher v. Schumacher*, 469 N.W.2d 793, 799 (N.D. 1991) (trial court abused its discretion in failing to allow plaintiffs to bring direct action, where the gravamen of their action was breach of fiduciary duty by majority shareholder of closely held corporation toward minority shareholder, and where a direct action would not expose corporation to multiple lawsuits, nor interfere with fair distribution of any recovery, nor prejudice the rights of creditors); *Crosby v. Beam*, 47 Ohio St. 3d 105, 109, 548 N.E.2d 217, 221 (1989) (when minority shareholders in close corporation allege breaches of fiduciary duty against majority shareholders, and allege that majority shareholders use their control to deprive minority shareholders of the benefit of their investment, the claim may be brought as a direct (individual) action, rather than a derivative action); *Noakes v. Schoenborn*, 116 Or. App. 464, 475, 841 P.2d 682, 688 (1992) (allegations that majority shareholders and direc-

tors squeezed minority shareholders out of their right to participate in business of closely held corporation, and appropriated business of corporation for themselves at grossly inadequate price, stated a claim for direct injuries to minority shareholders); and *DeBord v. Circle Y of Yoakum, Inc.*, 951 S.W.2d 127, 133 (Tex. App. 1997), *rev'd by Stary v. DeBord*, 967 S.W.2d 352, 41 Tex. Sup. Ct. J. 456 (1998) ("[C]laims of oppressive conduct arising out of the fiduciary duties owed by the majority shareholders to the minority shareholders [in a closely held corporation] are, in our opinion, individual claims of the minority shareholders.").

Further, the American Law Institute recommends that minority shareholders in a closely held corporation be allowed to file individual actions under certain circumstances:

> "If a corporation is closely held . . . , the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation . . . to a multiplicity of actions, (ii) materially prejudice the interests of creditors in the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons."

*Richards*, 19 Kan. App. 2d at 962, 879 P.2d at 647 (quoting *Principles of Corporate Governance: Analysis and Recommendations* § 7.01(d) (1992).

Although the recommendations of the American Law Institute have not been adopted in North Carolina, three of the decisions of this Court have allowed direct, or individual, actions by minority shareholders in a close corporation setting. In *Loy v. Lorm Corp.*, 52 N.C. App. 428, 278 S.E.2d 897 (1981), plaintiff Loy was a minority shareholder in Lorm, Inc., together with the three individual defendants. Loy and the defendants formed Lorm, Inc., in 1964, to operate the Port O' Call Restaurant; each owned 25% of the Lorm, Inc., stock. *Id.* at 429-30, 278 S.E.2d at 899. The three defendants formed another corporation known as Marl Corporation to finance the purchase of necessary land, to construct a restaurant and to purchase necessary equipment and supplies. *Id.* at 429, 278 S.E.2d at 899. Marl leased the land, building, and equipment to Lorm on a yearly basis. Plaintiff also alleged, and defendants denied, that defendants agreed to sell him a 25% interest in Marl when he could afford to purchase the interest. *Id.* at 430, 278 S.E.2d at 900. In 1975, plaintiff advised defendants that he

was able to purchase the promised 25% interest, but defendants refused to sell any interest in Marl to him, denying any agreement. *Id.* Plaintiff resigned as manager of the Port O' Call Restaurant, but maintained his stock interest. *Id.* Defendants formed a third corporation, Bar, Inc., and transferred without consideration the assets of Lorm to the new corporation. Defendants sold a large amount of Marl stock to a new owner, who operated the restaurant through his own corporation. *Id.* Plaintiff brought an individual action against the individual defendants, named Marl as an additional defendant, and also "brought a shareholders['] derivative action against Lorm." *Id.* at 429, 278 S.E.2d at 899. Plaintiff alleged that the defendants breached their fiduciary duty to him as a minority shareholder, engaged in self-dealing which harmed Lorm, diverted profits from Lorm to Marl by having Lorm pay excessive rents to Marl, and breached their oral agreement to sell him a 25% interest in Marl. *Id.* at 430, 278 S.E.2d at 900. Plaintiff appealed to this Court from a grant of summary judgment in favor of Marl, and from a directed verdict in favor of the three defendants and Lorm. *Id.*

In writing for a unanimous panel of this Court to reverse the judgment of the lower court dismissing plaintiff's individual action against the defendants, Judge Becton "emphasize[d] that Lorm and Marl were closely-held corporations in which all three defendants were shareholders, directors and officers." *Id.* at 431, 278 S.E.2d at 900. Defendants conceded that under the decisions of our Supreme Court, "majority shareholders owe a fiduciary duty and obligation of good faith to minority shareholders as well as to the corporation." *Id.* at 432, 278 S.E.2d at 901. When a minority shareholder challenges the actions of the majority shareholders, "the burden shifts to the majority to establish that its actions were in all respects inherently fair to the minority and undertaken in good faith." *Id.* at 433, 278 S.E.2d at 901. The Court held that plaintiff presented evidence which made out a *prima facie* case that defendants were draining assets from Lorm without plaintiff sharing in them, and that in so doing defendants breached their fiduciary duty to plaintiff; the burden shifted to defendants to prove the fairness of the transfer of Lorm's assets to Bar, Inc. *Id.* at 435, 278 S.E.2d at 903. Thus, the trial court in *Loy* erred in granting defendants' motions for directed verdict both on plaintiff's individual action and his derivative suit. *Id.*

A few years later, another opinion by this Court demonstrated the difficulty in distinguishing between an individual and a derivative action. In *Miller*, 68 N.C. App. 40, 313 S.E.2d 849, *disc. review denied,*

311 N.C. 760, 321 S.E.2d 140 (1984), the plaintiff owned 20% of the stock in Ruth's Corporation and the defendant individuals owned the remaining 80% of the stock. *Id.* at 41, 313 S.E.2d at 850. Plaintiff's complaint alleged acts of mismanagement and oppression by the majority shareholder, and attempted to set out both derivative and individual actions. *Id.* The trial court found that plaintiff's rights as a minority shareholder had been violated and ordered the repurchase of plaintiff's shares at their fair market value. *Id.* The trial court denied plaintiff's request for attorneys' fees, however, and plaintiff appealed. *Id.* In affirming the trial court's denial of attorneys' fees, this Court noted in a divided opinion that plaintiff did not ask for any relief on behalf of Ruth's Corporation, and held that plaintiff's action was actually an individual action, not a derivative action. *Id.* at 42, 313 S.E.2d at 850. Because attorneys' fees may not be awarded in an individual action, the judgment of the trial court was affirmed. In a concurring opinion, Judge (later Chief Judge) Arnold opined that the action was actually in the nature of a derivative action, but upheld the exercise of discretion by the trial court in its denial of attorneys' fees. *Id.* at 43-46, 313 S.E.2d at 851-53.

Most recently, in *Outen,* 118 N.C. App. 263, 454 S.E.2d 883, we considered an appeal from an action involving a dispute over the affairs of a close corporation. Plaintiff secured a judgment which "[ran] in favor of plaintiff personally." *Id.* at 266, 454 S.E.2d at 885. We distinguished the situation from the usual minority-majority shareholder situation because plaintiff and defendant each owned a 50% interest in a closely held corporation. *Id.* In addition, the Court expressed concerns about the prejudice to the rights of possible creditors of the corporation if the recovery were held to run to the plaintiff, rather than to the corporation. *Id.* at 267, 454 S.E.2d at 886. In light of the equal ownership of stock in the corporation, we held that plaintiffs failed to show that "they maintained a direct action in addition to or in lieu of a derivative action." *Id.* at 267, 454 S.E.2d at 886. Consequently, the majority of a divided panel held that the recovery should have been awarded in favor of the corporation, rather than the defendant. *Id.*

We now analyze the allegations of the amended complaint in the case before us in light of the decisions of our Supreme Court regarding the fiduciary relationship of minority and majority shareholders, the decisions of our sister states, and the decisions of this Court; we simultaneously recognize that different rules may apply in the context of a dispute among shareholders of a closely held corporation.

At the heart of the amended complaint in this action are allegations by plaintiff shareholders, who collectively represent a minority ownership in the Company, that the individual defendants have used their majority stock ownership and control of the Company's Board of Directors to divert corporate funds and opportunities to themselves. It seems particularly appropriate to allow minority shareholders to file individual actions when a dispute arises within the context of a family owned corporation, or other corporation in which all shares of stock are held by a relatively small number of shareholders. Such a corporation, often termed a "close corporation" because its shares are "closely" held, has been defined as a

> "corporate entity typically organized by an individual, or a group of individuals, seeking the recognized advantages of incorporation, limited liability, perpetual existence and easy transferability of interests—but regarding themselves basically as partners and seeking veto powers as among themselves much more akin to the partnership relation than to the statutory scheme of representative corporate government."

*Meiselman v. Meiselman*, 309 N.C. 279, 289, 307 S.E.2d 551, 557 (1983) (quoting Israels, *The Sacred Cow of Corporate Existence: Problems of Deadlock and Dissolution*, 19 U. Chi. L. Rev. 778, 778-79 (1952)). In *Meiselman*, our Supreme Court noted that close corporations are often characterized as little more than "incorporated partnerships," such characterization "rest[ing] primarily on the fact that the 'relationship between the participants [in a close corporation], like that among partners, is one which requires close cooperation and a high degree of good faith and mutual respect . . . .' 2 F. O'Neal, *Close Corporations* § 9.02.' " *Id.* (alteration in original).

When the close relationships between the shareholders in a "family" or closely held corporation tragically break down, the majority shareholders are obviously in a position to exclude the minority shareholders from management decisions, leaving the minority shareholders with few remedies. "[T]he minority shareholder has neither the power to dissolve the business unit at will, as does a partner in a partnership, nor does he have the 'way out' which is open to a shareholder in a publicly held corporation, the opportunity to sell his shares on the open market. 2 F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Close Corporation* § 9.02 (3d ed. 1998). Thus, the illiquidity of a minority shareholder's interest in a close corporation renders him vulnerable to exploitation by the majority shareholders."

*Meiselman,* 309 N.C. at 291, 307 S.E.2d at 559. Although Article 14, Part 3, Judicial Dissolution, of the North Carolina Business Corporation Act allows shareholders to seek dissolution of a corporation and liquidation of its assets when "corporate assets are being misapplied or wasted," or when "liquidation is reasonably necessary for the protection of [their] rights or interests . . .", such relief is not available to shareholders who wish to retain their interests in a family business such as the Company. N.C. Gen. Stat. § 55-14-30(2) (1999). Contrary to the defendants' argument, it does not appear on this record that plaintiffs are maintaining this action as a "strike suit" merely to obtain a higher price for their shares in the Company. Plaintiffs have not invited the defendant majority shareholders to purchase their shares, nor have plaintiffs sought involuntary dissolution of the Company.

We find support in our decisions in *Loy, Miller, and Outen,* which are based upon and supported by earlier decisions of our Supreme Court, for our view that minority shareholders in a closely held corporation who allege wrongful conduct and corruption against the majority shareholders in the corporation may bring an individual action against those shareholders, in addition to maintaining a derivative action on behalf of the corporation.

There are other compelling reasons for allowing the plaintiffs in the case before us to proceed directly against the individual defendants and the defendant companies they control, rather than requiring that they seek relief in a derivative action. First, the recovery in a derivative action goes to the corporation. *Outen,* 118 N.C. App. at 266, 454 S.E.2d at 885. Thus, disposition of the recovery in a derivative action based on wrongdoing by the directors of a corporation would be under the control of the wrongdoers, unless a court exercised its equitable discretion by "directing an individual recovery in order to achieve a fair distribution of the proceeds of the action." Russell M. Robinson, II, *Robinson On North Carolina Corporation Law* § 17-2(c) at 336 (5th ed. 1995). It would be unrealistic to expect the interests of plaintiff minority shareholders who prevail in a derivative action to be protected by defendant majority shareholders who have allegedly converted, appropriated, and wasted corporate assets.

Further, if an action by plaintiffs who are minority shareholders in a close corporation against the majority shareholders in the corporation is treated as a derivative action, the burdensome procedural requirements of derivative litigation discussed above would apply.

Still further, there is no indication in this record that the involved corporations are insolvent, or that the rights of corporate creditors are otherwise prejudiced by the possibility of an individual recovery in this case. There does not appear to be any danger of multiple lawsuits, since the Company's shareholders—with the exception of the minor children of defendants—are parties to this litigation.

For all the reasons stated above, we hold that the trial court erred in characterizing plaintiffs' claims against the individual defendants as solely derivative in nature. Plaintiffs may properly pursue their claims against the individual defendants both as individual and as derivative claims. As to the business defendants, plaintiffs allege that those defendants are under the control of some or all of the defendants or have entered into a conspiracy with the individual defendants to siphon off corporate assets from the Company, to deprive the Company of corporate opportunities, and to redirect those assets and opportunities to the individual defendants. For those reasons, we do not believe the business defendants are independent third parties but are inextricably wedded to the individual defendants. Plaintiffs can, therefore, maintain a direct action against the business defendants under the circumstances alleged in the amended complaint.

Even if we assume, however, that plaintiffs must show that they have standing to maintain a direct action against the business defendants under the rule set out in *Howell*, *Barger*, and the recent decision of our Supreme Court in *Energy Investors Fund*, 351 N.C. 331, 525 S.E.2d 441, we hold that plaintiffs have alleged facts which bring them within the requirements of those cases.

In *Barger*, the plaintiff shareholders personally guaranteed the corporation's loans after an accounting firm assured them that the corporation was financially solvent. *Barger*, 346 N.C. at 655, 488 S.E.2d at 217. The corporation became bankrupt and the shareholders sued the accounting firm and its members for the diminished value of their shares and for their losses as guarantors of the loan. *Id.* at 656, 488 S.E.2d at 218. Our Supreme Court held that there was a "genuine issue of material fact as to whether defendants owed them a special duty that was personal to them as guarantors and separate and distinct from the duty defendants owed the corporation." *Id.* at 662, 488 S.E.2d at 221. Thus, the plaintiffs could sue in their *individual* capacities as *personal guarantors* of the corporation's loans under the "special duty" exception. *Id.* at 663, 488 S.E.2d at 222.

NORMAN v. NASH JOHNSON & SONS' FARMS, INC.

[140 N.C. App. 390 (2000)]

However, the *Barger* Court also held that "plaintiffs may not proceed with their lawsuit as individual shareholders under the 'special duty' exception to the general rule" because "[a]ll of the allegations indicate that any duty defendants owed plaintiffs was purely derivative of defendants' duty to provide non-negligent services to [the corporation]." *Id.* at 660, 488 S.E.2d at 220. Here, there is ample evidence both that the defendants owed a "special duty" to the plaintiffs, and that plaintiffs have suffered a loss different in kind and degree from the individual defendant shareholders. First, as pointed out above, our cases have consistently held that majority shareholders in a close corporation owe a "special duty" and obligation of good faith to minority shareholders.

> "The devolution of unlimited power imposes on holders of the majority of the stock a correlative duty, the duty of a fiduciary or agent, to the holders of the minority of the stock, who can act only through them—the duty to exercise good faith, care and diligence to make the property of the corporation produce the largest possible amount, to protect the interests of the holders of the minority of the stock, and to secure and pay over to them their just proportion of the income and of the proceeds of the corporate property. . . . It is the fact of control of the common property held and exercised, and not the particular means by which or manner in which the control is exercised, that creates the fiduciary obligation on the part of the majority stockholders in a corporation for the minority holders. Actual fraud or mismanagement, therefore, is not essential to the application of the rule."

*Gaines v. Manufacturing Co.*, 234 N.C. 340, 344-45, 67 S.E.2d 350, 353 (1951) (quoting 13 Am. Jur. *Corporations* § 422-23 (1938)). *Accord, Hill v. Erwin Mills, Inc.*, 239 N.C. 437, 443, 80 S.E.2d 358, 362 (1954) (rights and powers vested in those holding a majority of the capital stock in a corporation imposes on them a fiduciary relationship, requiring them to exercise good faith, care, and diligence, and to protect the interests of the minority shareholders). Here, plaintiffs allege that defendants are acting in concert, that defendants own the majority of the stock in the Company, are the officers of the Company, and control the Company's Board of Directors. These allegations are sufficient to give rise to a fiduciary relationship between plaintiffs and the defendants and establish that defendants owed plaintiffs a "special duty" within the meaning of the *Barger* decision.

We also believe that plaintiffs have sufficiently alleged that they have suffered an injury "separate and distinct" from the injury sustained by the other shareholders or the corporation itself. Plaintiffs have alleged in great detail acts of the individual defendants and the business entities they control to divert assets and business opportunities from the Company to the business defendants (and thereby to the individual defendants) and thus enrich themselves at the expense of the Company and the plaintiffs. The gist of plaintiffs' allegations is that they have suffered substantial financial losses as the result of the defendants' actions, while the defendants have obviously profited from those same wrongful acts. Plaintiffs have sufficiently alleged that they have suffered injuries "separate and distinct" from the defendants, who have suffered no injuries at all. Such allegations meet the second prong of the *Howell* and *Barger* test.

In summary, we hold that under the circumstances of this case, the plaintiff minority shareholders in this closely held corporation may maintain their individual actions against the majority shareholders in the Company based on their allegations of wrongdoing, including the allegations of diversion of corporate assets and opportunities. Further, we believe the allegations of the amended complaint support the view that the business defendants are not third parties within the meaning of *Howell*, *Barger* and *Energy Investors*, but are instead merely conduits and tools of the individual defendants. However, even if the *Howell* and *Barger* rationale applies in these circumstances, the plaintiffs have alleged sufficient facts to demonstrate that they satisfy its dual requirements. The conclusion of the trial court that the plaintiffs' claims are purely derivative in nature is reversed.

## II. Plaintiffs' Derivative Claims

[2] As a general rule regarding derivative suits, "a demand that the directors act is a prerequisite to a shareholder suing upon behalf of the corporation." *Roney v. Joyner*, 86 N.C. App. 81, 83, 356 S.E.2d 401, 402-03 (1987). Until 1995, North Carolina recognized an equitable exception excusing a shareholder from making demand where demand would be futile. *See id.* at 84, 356 S.E.2d at 403. The equitable exception, usually referred to as the futility doctrine or futility exception, was grounded in the ancient principle that the law does not require a person to do a vain, or futile, act. *See Seaboard Air Line R.R. v. Atlantic Coast Line R.R.*, 240 N.C. 495, 515, 82 S.E.2d 771, 785 (1954). " '[I]n the state courts there are occasions when the allegation that the stockholder has requested the directors to bring suit and they

have refused may be omitted, since the request itself is not required. This occurs when the corporate management is under the control of the guilty parties. No request need then be made or alleged since the guilty parties would not comply with the request; and even if they did the court would not allow them to conduct the suit against themselves.' Cook on Corporations, sec. 741." *Murphy v. City of Greensboro*, 190 N.C. 268, 275-76, 129 S.E. 614, 617-18 (1925).

Prior to its amendment in 1995, the Business Corporation Act provided with regard to derivative proceedings that the complaint

> shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort.

N.C. Gen. Stat. § 55-7-40(b) (1990). *See* 1995 N.C. Sess. Laws ch. 149, § 1.

In 1995, our General Assembly rewrote our statutes governing derivative proceedings. N.C. Gen. Stat. § 55-7-42 now provides that

> No shareholder may commence a derivative proceeding until:
>
> (1) A written demand has been made upon the corporation to take suitable action; and
>
> (2) 90 days have expired from the date the demand was made unless, prior to the expiration of the 90 days, the shareholder was notified that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

*Id.* Defendants contend that N.C. Gen. Stat. § 55-7-42 eliminated the futility exception by requiring demand in *all* derivative actions based on conduct occurring on or after 1 October 1995. 1995 N.C. Sess. Laws ch. 149, § 2 (Act became effective 1 October 1995, "and applies to actions upon which shareholder derivative suits are based occurring on or after that date"). Defendants argue that the statute requires plaintiffs to allege in their complaint that they made such demand; because they failed to do so, defendants contend, plaintiffs' derivative action must be dismissed. The trial court agreed with defendants' position and concluded in its order of dismissal that "[t]he futility exception has been replaced by the language of N.C.G.S. § 55-7-42, and the Plaintiffs' derivative claims must be dismissed for failure to

comply with the requirements of N.C.G.S. § 55-7-42." Plaintiffs assign error to the trial court's conclusion.

We note that the above holding by the trial court was a conclusion of law, and as such, it is reviewable *de novo* on appeal. *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000). The issue before this Court is one of statutory construction; that is, whether the enactment of N.C. Gen. Stat. § 55-7-42 has eliminated the futility exception to the demand requirement. We must then decide a second issue, whether the amended statute requires a shareholder to allege in his pleadings that he has complied with the demand requirement.

On the first issue, we agree with the conclusion of the trial court that the statutory amendment eliminates the futility exception. "The general rule in statutory construction is that '[a] statute must be construed as written.' " *Carrington v. Brown*, 136 N.C. App. 554, 558, 525 S.E.2d 230, 234, *disc. review denied*, 352 N.C. 147, —— S.E.2d —— (2000).

> "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.

*Id.* (quoting 27 Strong's N.C. Index 4th *Statutes* § 28 (1994)). Further,

> "[W]here the Legislature has made no exception to the positive terms of a statute, the presumption is that it intended to make none, and it is a general rule of construction that the courts have no authority to create, and will not create, exceptions to the provisions of a statute not made by the act itself."

*Upchurch v. Funeral Home*, 263 N.C. 560, 565, 140 S.E.2d 17, 21 (1965) (quoting 50 Am. Jur. *Statutes* § 432, p. 453 (1944)).

Here, the language of the statute is clear and it is not necessary for us to resolve an ambiguity. Under the plain language of the statute, the demand requirement is a condition precedent to the institution of any and all derivative actions. Although a compelling argument can be made that such demand will accomplish little in the close corporation context, the Legislature did not create a "close corporation exception" to the statutory demand requirement. One of our leading commentators on North Carolina corporation law explains

that the 1995 amendment was necessary because the futility exception "caused excessive and unnecessary litigation on a preliminary point, which was the principal reason for repealing the futility exception rule and adopting a universal-demand rule." Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 17-3 at 340 (5th ed. 1995). Apparently, our Legislature sought to avoid an unnecessary layer of litigation by adding the requirement that a written pre-litigation demand be made in all cases. While the demand may not avoid litigation, it may be easily complied with.

We are further convinced that the Legislature intended to repeal the futility exception to the demand rule because it did not re-enact those portions of the previous demand statute which allowed a plaintiff to explain in detail the reasons for failure to make demand prior to filing the derivative proceeding. 1995 N.C. Sess. Laws ch. 149, § 2.

We hold, therefore, that the enactment of N.C. Gen. Stat. § 55-7-42 effected a repeal of the futility exception, and that plaintiffs in this case were therefore required to make demand on the Company's board of directors prior to instituting this derivative litigation. Plaintiffs argue, however, that even if we conclude that the futility doctrine is now repealed, there is no requirement in the amended statute that plaintiffs allege in their complaint that they have satisfied the demand requirement. We note that N.C. Gen. Stat. § 55-7-42 does not explicitly require that the complaint in a derivative proceeding state how the demand requirement was met, although its predecessor statute (§ 55-7-40) required that a plaintiff allege his efforts "with particularity." The fact that the Legislature did not carry over the requirement of pleading demand efforts with particularity is some evidence that such a requirement was not intended. 1995 N.C. Sess. Laws ch. 149, § 2; *Carrington*, 136 N.C. App. at 558, 525 S.E.2d at 234. Despite the rules of statutory construction, however, we are aware that the omission of the pleading requirement could have been a legislative oversight. Aware of the legislative omission, the author of our foremost treatise on corporation law in North Carolina opines that "the rule requiring such a description in the complaint is so well established that it undoubtedly still applies." *Robinson* § 17-3 at 339, n.5.

In the absence of a clear legislative mandate, our Rules of Civil Procedure seem to provide an answer to this issue. Rule 9(c) provides that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions prece-

dent have been performed or have occurred." N.C. Gen. Stat. § 1A-1, Rule 9(c) (1999). In the case before us, plaintiffs alleged in their complaint that "[a]ll conditions precedent to the filing of this action by Plaintiffs have been complied with." It appears that plaintiffs' allegation complies with the requirement of Rule 9(c). Consequently, the trial court erred in concluding in the context of a Rule 12(b)(6) motion that the plaintiffs did not comply with the statutory requirements of a derivative action, and erred in granting the motion to dismiss their derivative claims.

We also note that plaintiffs allege in their complaint that they "have brought the issues alleged in th[is] action to the attention of the Company and its President and, upon information and belief, no suitable action has been taken to effect a remedy." In light of our earlier holding, however, we need not reach the question whether that allegation sufficiently complies with the requirements of N.C. Gen. Stat. § 55-7-42.

Finally, even if we assume for the sake of argument that plaintiffs did not adequately comply with the demand requirement of N.C. Gen. Stat. § 55-7-42, that statute by its own terms applies only to derivative proceedings based on actions which occurred on or after 1 October 1995. Thus, the failure to make an adequate pre-litigation demand would not bar plaintiffs' claims insofar as they are based on defendants' actions prior to that date.

### III. Validity of Claims for Relief

Plaintiffs contend the trial court erred in concluding that certain of plaintiffs' derivative claims failed to state causes of action against some or all of the defendants. The trial court ruled that all of plaintiffs' claims "are derivative in nature," and thus did not rule on whether any of the claims stated valid *individual* causes of action. Specifically, the trial court ruled as follows with respect to the motions to dismiss urged by all of the individual defendants and all of the business defendants *except* for JIP and Privateer:

3. The futility exception has been replaced by the language of N.C.G.S. § 55-7-42, and the Plaintiffs' derivative claims must be dismissed for failure to comply with the requirements of N.C.G.S. § 55-7-42.

4. In addition to dismissing all derivative claims for failure to satisfy statutory requirements as set out in paragraph 3 above,

NORMAN v. NASH JOHNSON & SONS' FARMS, INC.

[140 N.C. App. 390 (2000)]

the Court addresses separately the allegations of each derivative claim and rules as follows:

    a. To the extent the Plaintiffs rely upon a constructive trust as a separate cause of action, it is insufficient and it is dismissed;

    b. Except as set out in paragraph 3 above, the Plaintiffs have sufficiently pleaded the elements of a claim for breach of fiduciary duty;

    c. Except as set out in paragraph 3 above, the Plaintiffs have sufficiently pleaded the elements of a claim for conversion;

    d. The Plaintiffs' claim for civil conspiracy is insufficient and it is dismissed;

    e. The Plaintiffs' claim for unfair and deceptive trade practices is insufficient and it is dismissed;

    f. The Plaintiffs' claim for unjust enrichment is insufficient and it is dismissed.

Further, the trial court ruled that with respect to JIP and Privateer, all claims were dismissed with prejudice.

Because the trial court did not rule on whether any of plaintiffs' causes of actions stated valid *individual* claims, we will consider only whether the trial court erred in dismissing plaintiffs' *derivative* claims for failure to state a claim.

### Breach of Fiduciary Duty

Plaintiffs acknowledge that they did not attempt to state a claim for breach of fiduciary duty against either JIP or Privateer. The other defendants did not appeal from the trial court's ruling that, as to them, the elements of a claim for breach of fiduciary duty were sufficiently pled. Therefore, we need not further consider that cause of action.

### Conversion

[3] The trial court ruled that the allegations of the complaint sufficiently stated a claim for conversion against all defendants except JIP and Privateer. Therefore, we will consider the viability of a claim for conversion only against those defendants.

Conversion is defined as

"an unauthorized assumption and exercise of the right of owner-
ship over goods or personal chattels belonging to another, to the
alteration of their condition *or the exclusion of an owner's
rights.*"

*Spinks v. Taylor and Richardson v. Taylor Co.*, 303 N.C. 256, 264,
278 S.E.2d 501, 506 (1981) (quoting *Peed v. Burleson's, Inc.*, 244 N.C.
437, 439, 94 S.E.2d 351, 353 (1956)). Plaintiffs generally allege in their
amended complaint that the individual defendants have caused the
Company to "transfer . . . business opportunities, assets and income
streams through the formation of other companies" including JIP and
Privateer. Plaintiffs then allege specific actions taken by the individ-
ual defendants. They allege, among other things, that "Privateer[] . . .
grows and sells turkeys to the Company, a service which the
Company formerly and presently performs for itself"; that JIP was
formed and operated for the purpose of raising chickens and turkeys,
a service the Company formerly performed for itself; that the
Company loaned money to JIP to purchase property, and transferred
real property to JIP at less than market value; and that the Company
guaranteed substantial bank loans to Privateer. Plaintiffs also allege
that some of the business defendants, including JIP and Privateer,
"have been utilizing the Company's businesses and business concepts
despite the knowledge that the Company developed" them, and have
"utilized and profited from property belonging to the Company,
including, but not limited to, the Company's assets, the Company's
income streams and the Company's business opportunities." Finally,
plaintiffs allege that the actions of JIP and Privateer, among others,
"constitute an unauthorized assumption in exercising the rights of
ownership over personal property rightfully belonging to the
Company and/or the Plaintiffs."

We hold that the above allegations do not state a valid cause of
action for conversion against either JIP or Privateer. In North
Carolina, only goods and personal property are properly the subjects
of a claim for conversion. A claim for conversion does not apply to
real property. *McNeill v. Minter*, 12 N.C. App. 144, 146, 182 S.E.2d
647, 648 (1971). Nor are intangible interests such as business oppor-
tunities and expectancy interests subject to a conversion claim. *In re
Silverman*, 155 B.R. 362 (Bankr. E.D.N.C. 1993). Broadly construed,
the allegations of the complaint allege wrongdoing on the part of the
*individual defendants* who have caused the Company to do the acts
complained of above. There is no specific allegation that either JIP or

NORMAN v. NASH JOHNSON & SONS' FARMS, INC.

[140 N.C. App. 390 (2000)]

Privateer have made an unauthorized exercise of ownership rights over any of the personal property of the Company. Thus the trial court did not err in dismissing the claim for conversion against JIP and Privateer.

### Constructive Trust and Accounting

**[4]** The trial court ruled that "[t]o the extent the Plaintiffs rely upon a constructive trust as a separate cause of action, it is insufficient . . . ." Our Supreme Court has described a constructive trust as

> a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust. Unlike the true assignment for benefit of creditors, which is an express trust, intended as such by the creator thereof, a constructive trust is a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing. It is an obligation or relationship imposed irrespective of the intent with which such party acquired the property, and in a well-nigh unlimited variety of situations. Nevertheless, there is a common, indispensable element in the many types of situations out of which a constructive trust is deemed to arise. This common element is some fraud, breach of duty or other wrongdoing by the holder of the property, or by one under whom he claims, the holder, himself, not being a bona fide purchaser for value.

*Wilson v. Development Co.*, 276 N.C. 198, 211-12, 171 S.E.2d 873, 882 (1970) (citations omitted). Here, there are numerous allegations of breach of fiduciary duty on the part of all defendants except for JIP and Privateer, against whom plaintiffs did not allege a breach of fiduciary duty. There are also allegations that the defendants profited by the breaches of the fiduciary duty they owed plaintiffs. In order to prevent defendants from being unjustly enriched by their breaches of duty, equity could impose a constructive trust on property the defendants obtained as a result of their wrongful conduct and force them to give up that property. *Booher v. Frue*, 86 N.C. App. 390, 394, 358 S.E.2d 127, 129 (1987), *aff'd*, 321 N.C. 590, 364 S.E.2d 141 (1988) ("If a fiduciary has made a profit through the violation of a duty owed to a plaintiff 'he can be compelled to surrender the profit to the plain-

tiff.' "). Plaintiffs have sufficiently stated a claim for imposition of a constructive trust as to all defendants except for JIP and Privateer, and the decision of the trial court dismissing this cause of action is reversed as to the remaining defendants.

### Civil Conspiracy

**[5]** In order to state a claim for civil conspiracy, a complaint must allege "a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury." *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984). *See also Holt v. Holt*, 232 N.C. 497, 61 S.E.2d 448 (1950); and *Muse v. Morrison*, 234 N.C. 195, 66 S.E.2d 783 (1951). Here, the complaint is replete with allegations of a conspiracy by and between the defendants, acts done by some or all of the defendants in furtherance of that alleged conspiracy, and injury both to the Company and to the plaintiffs.

Defendants rely on the decision of this Court in *Jones v. City of Greensboro*, 51 N.C. App. 571, 277 S.E.2d 562 (1981), in which we held that in a summary judgment context the plaintiff could not use the same facts to form both the basis of a claim for conspiracy to commit certain torts *and* the basis for claims based on the underlying torts. We distinguish *Jones*, however, because there a divided panel upheld the trial court's decision to dismiss plaintiff's action for conspiracy on defendant's motion for summary judgment, not on a motion to dismiss for failure to state a claim pursuant to the provisions of Rule 12(b)(6).

As a general rule, a plaintiff may plead "alternative theories of recovery based on the same conduct or transaction and then make an election of remedies." *Stanley v. Moore*, 339 N.C. 717, 724, 454 S.E.2d 225, 229 (1995). See also Rule 8 of the North Carolina Rules of Civil Procedure, which provides that a pleading may demand "relief in the alternative or of several different types," N.C. Gen. Stat. § 1A-1, Rule 8(e)(2), and also provides that "[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically," and "may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both." N.C. Gen. Stat. § 1A-1, Rule 8(e)(2) (1999). Plaintiffs' complaint sets out a valid cause of action for civil conspiracy against all defendants, and the trial court erred in ruling otherwise.

**NORMAN v. NASH JOHNSON & SONS' FARMS, INC.**

[140 N.C. App. 390 (2000)]

## Unfair and Deceptive Trade Practices

**[6]** To set out a valid claim for unfair and deceptive trade practices, a plaintiff must allege that (1) defendant has committed unfair or deceptive acts or practices; (2) defendant's conduct was in commerce or affected commerce; (3) defendant's conduct caused injury to plaintiff. *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998).

We have previously held that allegations of fraud or breach of fiduciary duty will support a claim for unfair or deceptive trade practices. *HAJMM Co. v. House of Raeford Farms*, 94 N.C. App. 1, 14, 379 S.E.2d 868, 876 (1989), *aff'd in part and rev'd in part on other grounds*, 328 N.C. 578, 403 S.E.2d 483 (1991). Here, plaintiffs alleged numerous instances of breach of fiduciary duty by the defendants, and the trial court found that plaintiffs had alleged a valid claim for breach of fiduciary duty. Those allegations support plaintiffs' claim for unfair or deceptive trade practices. Further, plaintiffs allege that the Company's competitors (the business defendants) were unfairly competing with the Company through use of assets and business opportunities which belonged to the Company, and that the acts of the defendants have injured the Company and have caused it monetary loss. Those allegations are sufficient to set out a claim for unfair or deceptive trade practices within the meaning of Chapter 75, and we reverse the ruling of the trial court to the contrary.

## Unjust Enrichment

**[7]** In order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received, but that the defendant has failed to make restitution for the property or benefits. *Adams v. Moore*, 96 N.C. App. 359, 362, 385 S.E.2d 799, 801 (1989), *disc. review denied*, 326 N.C. 46, 389 S.E.2d 83 (1990). Here, plaintiffs allege that the defendants breached their fiduciary duties and received benefits for which they have not paid, thereby injuring the Company and depriving it of such benefits. Although plaintiffs incorrectly label the claim as one in the nature of *quantum meruit*, such allegations are sufficient to state a claim for unjust enrichment. The ruling of the trial court on this point is reversed.

### IV. Plaintiffs' Motion to Amend

Finally, plaintiffs contend the trial court erred in denying their motion to amend their complaint. Plaintiffs contend that because the trial court concluded that they failed to state a claim upon which relief may be granted, they should have been allowed to amend their complaint to plead any additional facts which might give rise to a valid claim for relief. In light of our previous holdings herein which are favorable to the plaintiffs, we need not address this assignment of error.

In summary, we reverse the order of the trial court insofar as it concludes that the "allegations of wrongdoing alleged in the Plaintiffs' . . . First Amended Complaint are derivative in nature" and hold that plaintiffs, who are minority shareholders in a closely held corporation, may assert claims against defendant majority shareholders both on their own behalf as well as derivatively on behalf of the Company. We affirm the conclusion of the trial court that the "futility exception" to the demand requirement has been repealed by the express language of N.C. Gen. Stat. § 55-7-42, but hold that plaintiffs sufficiently alleged their compliance with the demand requirement. Third, we hold that the complaint alleges facts sufficient to state derivative claims against all defendants for civil conspiracy, unfair and deceptive trade practices, unjust enrichment, and imposition of a constructive trust; the complaint also alleges facts sufficient to state derivative claims against all defendants, except for JIP and Privateer, for breach of fiduciary duty and for conversion. We do not reach plaintiffs' last assignment of error with regard to denial of their motion to amend the complaint.

Affirmed in part and reversed in part.

Judge TIMMONS-GOODSON concurs.

Judge GREENE concurs in part and dissents in part with separate opinion.

GREENE, Judge, concurring in part and dissenting in part.

I disagree with the majority that plaintiffs' individual claims against the majority shareholders and business defendants are not governed by *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 488 S.E.2d 215 (1997). I, therefore, dissent from section I of the majority's opinion.

**NORMAN v. NASH JOHNSON & SONS' FARMS, INC.**

[140 N.C. App. 390 (2000)]

### *Individual claims against majority shareholders*

Plaintiffs allege in their complaint individual claims against the majority shareholders of the Company for constructive trust and accounting, breach of fiduciary duty, conversion, civil conspiracy, unfair or deceptive trade practices, and quantum meruit. The majority states *Barger* has no application to these claims because the majority shareholders are not "third parties" within the meaning of *Barger.*[1] I disagree.

In *Barger*, the North Carolina Supreme Court created two exceptions to the general rule that "shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." *Barger*, 346 N.C. at 658, 488 S.E.2d at 219. First, a shareholder may bring an individual action against a third party when the third party "owed him a special duty." *Id.* at 658-59, 488 S.E.2d at 219. Second, a shareholder may bring an individual action against a third party when the shareholder suffered a "separate and distinct" injury as a result of the alleged wrongful conduct of the third party. *Id.* Although the Supreme Court did not define the meaning of "third party" in *Barger*, the authority cited in support of its opinion suggests "third party" refers to any party other than the corporation and includes officers, directors, and shareholders of the corporation. In support of its statement of the general rule that "shareholders cannot pursue individual causes of action against *third parties* for wrongs or injuries to the corporation," *Barger* relies on *Jordan v. Hartness*, 230 N.C. 718, 55 S.E.2d 484 (1949), which involved an action by one shareholder against another shareholder. *Barger*, 346 N.C. at 658, 488 S.E.2d at 219 (emphasis added) (citing *Jordan v. Hartness*, 230 N.C. 718, 55 S.E.2d 484 (1949)). Moreover, *Barger* relies in part on an article in the American Law Reports that defines "third parties" to include officers and directors of a corporation. *Barger*, 346 N.C. at 658, 488 S.E.2d at 219 (citing H.A. Wood, Annotation, *Stockholder's Right to Maintain (Personal) Action Against Third Person as Affected by Corporation's Right of Action for the Same Wrong*, 167 A.L.R. 279 (1947)). Accordingly, the majority shareholders in this case are "third parties" within the meaning of *Barger*, and plaintiffs may bring individual claims against these parties if they owed plaintiffs a "special duty" or plaintiffs suffered a "separate and distinct injury" as a result of their alleged wrongful conduct.

---

1. The majority suggests "third parties," within the meaning of *Barger*, are parties other than shareholders, officers, and directors of the corporation.

A "special duty" is a duty "the alleged wrongdoer owed directly to the shareholder as an individual." *Id.* at 659, 488 S.E.2d at 220. A "special duty" does not arise unless defendants owed a duty to plaintiffs that was "personal to plaintiffs as shareholders" and the duty was "separate and distinct" from the duty defendants owed to the corporation. *Id.*

In this case, plaintiffs allege in their complaint that the majority shareholders owe a fiduciary duty to them based on their status as minority shareholders in the Company. Plaintiffs acknowledge in their complaint, however, that the fiduciary duty owed by the majority shareholders to plaintiffs is the same fiduciary duty of "good faith, due care and/or loyalty" that the majority shareholders owe to the Company. Plaintiffs, therefore, have not alleged in their complaint a "special duty" owed to them by the majority shareholders that is separate and distinct from the duty owed to the corporation. Accordingly, plaintiffs may bring an individual action against the majority shareholders only if they suffered a "separate and distinct injury" as a result of the majority shareholders' alleged wrongful conduct.

A shareholder suffers a "separate and distinct injury" when " 'a legal basis exists to support plaintiffs' allegations of an individual loss, separate and distinct from any damage suffered by the corporation.' " *Id.* (quoting *Howell v. Fisher*, 49 N.C. App. 488, 492, 272 S.E.2d 19, 23 (1980), *disc. review denied*, 302 N.C. 218, 277 S.E.2d 69 (1981)). A diminution or destruction of the value of a plaintiff's shares is not an injury "separate and distinct" from injury to the corporation. *Id.*

In this case, plaintiffs allege in their complaint the majority shareholders injured the Company by "diverting opportunities, assets and/or income streams of the Company for their own personal benefit." Plaintiffs, however, do not allege any individual loss "separate and distinct from any damages suffered by the corporation." The only loss suffered by plaintiffs is loss caused by the diminution of the value of their shares. Plaintiffs, therefore, may not maintain an individual action against the majority shareholders of the Company pursuant to the *Barger* exceptions. Accordingly, the trial court properly dismissed plaintiffs' individual claims against the majority shareholders.

**NORMAN v. NASH JOHNSON & SONS' FARMS, INC.**

[140 N.C. App. 390 (2000)]

*Individual claims against business defendants*

In addition to their claims against the majority shareholders, plaintiffs also allege in their complaint individual claims for constructive trust and accounting, conversion, civil conspiracy, unfair and deceptive trade practices, and quantum meruit against several businesses with which the Company engaged in business dealings. As with the claims against the majority shareholders, these claims against the business defendants are claims against "third parties" and are governed by *Barger*.[2] These claims may therefore be brought only if the business defendants owed plaintiffs a "special duty" or plaintiffs suffered a "separate and distinct injury" as a result of the alleged wrongful conduct of the business defendants.

In this case, plaintiffs do not allege in their complaint any duty owed to them by the business defendants that is separate and distinct from the duty these business defendants owed to the Company. Rather, plaintiffs' sole relationship with the business defendants arose from the business defendants' dealings with the Company. Plaintiffs, therefore, may not maintain an individual action against the business defendants based on the "special duty" exception of *Barger*. Additionally, plaintiffs do not allege in their complaint that they suffered any "separate and distinct injury" from the Company as a result of the alleged wrongful conduct of the business defendants. Instead, plaintiffs allege injury resulting from the diversion to the business defendants of "opportunities, assets and/or income streams of the Company." Any alleged injury to plaintiffs, therefore, arises from the diminution of the value of their shares. Accordingly, plaintiffs may not maintain an action against the business defendants under the *Barger* exceptions. I, therefore, would affirm the trial court's order dismissing plaintiffs' individual claims against the majority shareholders and business defendants.

I fully concur in sections II, III, and IV of the majority's opinion.

---

2. The majority states the business defendants in this case are not "third parties" and plaintiffs' claims against them are, therefore, not governed by *Barger*. Nevertheless, the majority states, assuming the business defendants are "third parties" and plaintiffs' claims are consequently governed by *Barger*, the complaint sufficiently alleges both a "special duty" owed to plaintiffs and "separate and distinct injury" to plaintiffs. I believe the business defendants in this case are "third parties" within the meaning of *Barger* and plaintiffs' claims against the business defendants are, consequently, governed by *Barger*.