RANDY B. ROYAL, EDWIN BOOTH, OWEN BURNEY, JR., ED CARTER, GARY GRANT, AILEEN FORD, WILLIAM HARPER, MARY JO LOFTIN, DANIEL MALLISON, GARY PHILLIPS, FANNIE WALDEN, DANIEL JOHNSON WILLIS, THE NORTH CAROLINA STATE CONFERENCE OF NAACP BRANCHES, NORTH CAROLINA FAIR SHARE, THE CONCERNED CITIZENS OF TILLERY, THE NORTH CAROLINA ALLIANCE FOR DEMOCRACY, THE NORTH CAROLINA WASTE AWARENESS REDUCTION NETWORK, CITIZENS FOR RESPONSIBLE GOVERNMENT OF GUILFORD COUNTY, AND THE NORTH CAROLINA CONSUMERS COUNCIL v. THE STATE OF NORTH CAROLINA AND THE NORTH CAROLINA BOARD OF ELECTIONS

No. COA01-1311

(Filed 15 October 2002)

**Elections— appealability—public financing of political campaigns—legislative issue**

The trial court's order dismissing plaintiffs' lawsuit seeking a declaratory judgment under N.C.G.S. § 7A-245(a)(4) and an injunction in an effort to require the State of North Carolina to create a scheme for publicly financing elections is affirmed, because there is no constitutional requirement that election campaigns be publicly financed, and public financing of political campaigns is a legislative issue.

Appeal by plaintiffs from order entered 2 August 2001 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 14 August 2002.

*Smith Helms Mulliss & Moore, L.L.P., by James G. Exum, Jr.; National Voting Rights Institute, by Lisa J. Danetz; Gregory Luke; Harry C. Martin; Ferguson, Stein, Chambers, Wallas, Adkins, Gresham & Sumter, P.A., by Adam Stein; Advocates for Children's Services, Legal Services of North Carolina, by Lewis Pitts, for plaintiff appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorneys General James Peeler Smith and Norma S. Harrell, for defendant appellees.*

McCULLOUGH, Judge.

Plaintiffs are former or potential candidates for the General Assembly, voters, and certain public interest groups. On 28 December 1999, plaintiffs filed suit seeking a declaratory judgment pursuant to N.C. Gen. Stat. § 7A-245(a)(4) (2001) and the Uniform Declaratory

Judgment Act, N.C. Gen. Stat. § 1-253 to -267 (2001), as well as an injunction ordering defendants

> to take all steps necessary to remedy the exclusion of Plaintiffs, and other citizens without access to substantial wealth, from meaningful participation in all integral aspects of the electoral process for North Carolina legislative elections by providing adequate public financing which will allow any and all qualified citizens to compete meaningfully for public office, regardless of their economic status or personal associations[.]

On 25 February 2000, defendants filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) and (6) (2002). Defendants contended the trial court lacked subject matter jurisdiction because plaintiffs did not have standing and the issues they raised constituted a non-justiciable political question. Defendants also contended that none of plaintiffs' six claims for relief stated a claim upon which relief could be granted. On 2 August 2001, the trial court entered an order dismissing plaintiffs' amended complaint after concluding "[t]he Amended Complaint, in all respects, fails to state a claim upon which relief can be granted and is hereby dismissed." From this ruling, plaintiffs appealed.

In reaching its determination, the trial court assumed plaintiffs had standing and that it had subject matter jurisdiction. We shall make the same assumptions and address this case on the merits, although the issue of standing is far from certain. *See State v. Rippy*, 80 N.C. App. 232, 341 S.E.2d 98 (1986) (manager of fishing pier could not collaterally attack constitutionality of a statute regulating a 750-foot zone next to the pier because he could not establish he had been injured).

In general, plaintiffs claim that only those persons who are personally wealthy or who can raise large sums of money are viable candidates for election to public office and that the proper interpretation of several North Carolina constitutional provisions would require the State to create a scheme for publicly financing elections. Plaintiffs allege this financial barrier, which they define as a "wealth primary," operates to exclude non-wealthy citizens from candidacy.

Plaintiffs divide their complaint into six counts, as follows:

## Count 1: Equal Protection

Here, plaintiffs rely on Article I, § 19 of the North Carolina Constitution, which provides:

[Article I] Sec. 19. *Law of the land; equal protection of the laws.* No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

## Count 2: Property Qualifications Affecting the Right to Vote or Hold Office

In this count, plaintiffs rely on the following sections of the North Carolina Constitution: Article I, §§ 10 and 11, Article II, §§ 6 and 7, and Article VI, § 6. These provisions provide:

[Article I] Sec. 10. *Free elections.* All elections shall be free.

[Article I] Sec. 11. *Property qualifications.* As political rights and privileges are not dependent upon or modified by property, no property qualification shall affect the right to vote or hold office.

[Article II] Sec. 6. *Qualifications for Senator.* Each Senator, at the time of his election, shall be not less than 25 years of age, shall be a qualified voter of the State, and shall have resided in the State as a citizen for two years and in the district for which he is chosen for one year immediately preceding his election.

[Article II] Sec. 7. *Qualifications for Representative.* Each Representative, at the time of his election, shall be a qualified voter of the State, and shall have resided in the district for which he is chosen for one year immediately preceding his election.

[Article VI] Sec. 6. *Eligibility to elective office.* Every qualified voter in North Carolina who is 21 years of age, except as in this Constitution disqualified, shall be eligible for election by the people to office.

## Count 3: Freedom of Conscience and Association

Here, plaintiffs rely on Article I, §§ 12 and 13 of the North Carolina Constitution. These provisions provide:

[Article I] Sec. 12. *Right of assembly and petition.* The people have a right to assemble together to consult for their common good, to instruct their representatives, and to apply to the General Assembly for redress of grievances; but secret political

societies are dangerous to the liberties of a free people and shall not be tolerated.

[Article I] Sec. 13. *Religious liberty.* All persons have a natural and inalienable right to worship Almighty God according to the dictates of their own consciences, and no human authority shall, in any case whatever, control or interfere with the rights of conscience.

## Count 4: Special Privileges and Emoluments

This count relies on Article I, § 32 of the North Carolina Constitution, which provides:

[Article I] Sec. 32. *Exclusive emoluments.* No person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services.

## Count 5: Popular Sovereignty and Representation

Here, plaintiffs rely on Article I, §§ 2 and 8 of the North Carolina Constitution. These provisions provide:

[Article I] Sec. 2. *Sovereignty of the people.* All political power is vested in and derived from the people; all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole.

[Article I] Sec. 8. *Representation and taxation.* The people of this State shall not be taxed or made subject to the payment of any impost or duty without the consent of themselves or their representatives in the General Assembly, freely given.

## Count 6: Free Elections

In their final count, plaintiffs rely on Article I, § 10 of the North Carolina Constitution (set forth previously in Count 2). Having set forth the constitutional provisions relied upon by plaintiffs, we turn to the question presented by this appeal. When reviewing the dismissal of a complaint pursuant to Rule 12(b)(6), we recognize that

we are to liberally construe the complaint and determine whether, as a matter of law, the allegations of the complaint, taken as true, are sufficient to state some *legally recognized claim* or claims upon which relief may be granted to plaintiffs.

While the well-pled allegations of the complaint are taken as true, conclusions of law or "unwarranted deductions of fact" are not deemed admitted.

*Norman v. Nash Johnson and Sons' Farms, Inc.*, 140 N.C. App. 390, 394, 537 S.E.2d 248, 252 (2000) (emphasis added) (citations omitted), *disc. reviews on other issues denied*, 353 N.C. 378, 547 S.E.2d 13-14 (2001). In reviewing plaintiffs' amended complaint and the constitutional provisions relied on, it is clear that plaintiffs would like this Court to rule on an issue that is properly within the province of the legislature. As noted in defendants' brief, public financing of political campaigns is an issue that has been debated in our state and "has been played out for decades in state houses across the country and in our nation's capitol."

To reach their desired result, plaintiffs would have this Court read a meaning into the word "qualification" that is not present in its definition. As applied to elections, the word "qualification" means "[t]he possession of qualities or properties (such as fitness or capacity) inherently or legally necessary to make one eligible for a position or office, or to perform a public duty or function[.]" *Black's Law Dictionary* 1253 (7th ed. 1999). Nowhere in the constitutional provisions set forth previously and relied on by plaintiffs is there any direct requirement that campaigns be publicly financed, although the same cannot be said for the financing of education. *See* N.C. Const. art. IX, § 2(1).

Inadequate funding of public educational opportunity is an issue the courts are able to address. *See Leandro v. State of North Carolina*, 346 N.C. 336, 488 S.E.2d 249 (1997). Plaintiffs are not the first litigants who have attempted to have the courts rule on issues that are properly the subject of legislative determination. *See Martin v. Housing Corp.*, 277 N.C. 29, 175 S.E.2d 665 (1970) (upholding the constitutionality of the North Carolina Housing Corporation, as the decision to create the corporation was within the legislature's powers); *Insurance Company v. McDonald*, 277 N.C. 275, 285, 177 S.E.2d 291, 298 (1970) (stating that in the absence of constitutional provisions or necessary implications therefrom, "questions as to public policy are for legislative determination"). We likewise decline plaintiffs' invitation in this case.

Based on the foregoing, we hold that public financing of political campaigns is clearly a legislative issue. The trial court's order dismissing plaintiffs' lawsuit is therefore

Affirmed.

Judges McGEE and BRYANT concur.