DONALD I. CARRINGTON, Plaintiff v. MARY SUE BROWN, in her official capacity as Chairman of the Employment Security Commission of North Carolina, Defendant

No. COA98-1513

(Filed 15 February 2000)

**Employer and Employee— unlawful discharge—Employment Security Commission—department head has authority to discharge**

The trial court did not err in granting summary judgment in favor of defendant Mary Sue Brown in her official capacity as Chairman of the Employment Security Commission on plaintiff-employee's unlawful discharge claim because the Chairman, as the department head, has authority to terminate an employee in an exempt policymaking position since it is the individual who has authority to make personnel decisions in the department or unit in which the employee in the exempt position is employed who may "transfer, demote, or separate" the employee pursuant to N.C.G.S. § 126-5(e).

Appeal by plaintiff from an order entered 17 August 1998 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 5 October 1999.

*John C. Hunter for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Tiare B. Smiley and Employment Security Commission Chief Counsel V. Henry Gransee, Jr., for defendant-appellee.*

HUNTER, Judge.

Donald I. Carrington ("plaintiff") appeals from summary judgment in favor of Mary Sue Brown in her official capacity as Chairman of the Employment Security Commission of North Carolina ("defendant"). On appeal, plaintiff contends that the superior court erred in granting summary judgment to defendant on plaintiff's unlawful discharge claim. We affirm on the basis that the Chairman of the Employment Security Commission of North Carolina has authority to terminate an employee in an exempt policymaking position under N.C. Gen. Stat. § 126-5(e).

The evidence submitted to the trial court indicates that plaintiff had been a state employee for eight and one-half years when he was terminated from his position as Deputy Director of the Labor Market Information Division of the Employment Security Commission of North Carolina ("ESC") in 1993. On 29 April 1993, Governor James B. Hunt, Jr. ("Governor Hunt") designated plaintiff's position as an "exempt policymaking position" pursuant to the provisions of N.C. Gen. Stat. § 126-5. This designation effectively exempted plaintiff's position from almost all of the civil service type protections afforded to state employees under the North Carolina State Personnel System, N.C. Gen. Stat. § 126-1, *et seq.* On 3 May 1993, plaintiff received a letter from Ann Duncan ("Duncan"), who was then Chairman of the ESC, informing him that his position had been designated as "policymaking exempt" and that henceforth he would serve at the pleasure of the Chairman of the ESC. On 11 August 1993, plaintiff received a second letter from Duncan informing him that effective that day, he was being terminated pursuant to Governor Hunt's designation of his position as an "exempt policymaking position." The letter gave no specific reason, but did state that "your continuing employment in this role is not consistent with the overall needs of this Administration." It also stated that the termination was being taken "pursuant to the authority provided in N.C.G.S. § 126-5(e)" and was signed by Duncan.

Plaintiff filed this action on 9 August 1996, wherein he seeks reinstatement to his former position as if he had not been terminated, including the reinstatement of all back pay and benefits. Plaintiff brought suit against defendant, the Chairman of the ESC at the time this action was filed, in her official capacity; however, in his complaint, plaintiff alleges no wrongful acts by defendant. Instead, he alleges that former Chairman Duncan had no lawful authority to discharge him from his "policymaking position" as such power was vested solely in Governor Hunt pursuant to N.C. Gen. Stat. § 126-5(e); that such action was "unlawful, arbitrary and capricious" in violation of Article I, Section 19 of the Constitution of North Carolina; and that his discharge was due to plaintiff being a member of the Republican Party and such unequal treatment violated Article I, Section 19 of the Constitution of North Carolina. Defendant answered, alleging several defenses including lack of service, statute of limitations, sovereign and official immunity, *res judicata*, and collateral estoppel. The *res judicata* and collateral estoppel defenses were based on the allegation that plaintiff's claims had previously been litigated and judgment entered in a suit in the federal district court, which was affirmed by the United States Fourth Circuit Court of Appeals in *Carrington v. Hunt*, No. 95-3117, per curiam, (4th Cir. 1997) (unpublished).

Defendant subsequently moved for dismissal on the basis of lack of jurisdiction due to lack of service, defendant's sovereign and official immunity, failure to state a claim for which relief can be granted, that defendant acted at all times in compliance with applicable state law, and that plaintiff's action is barred by the applicable statute of limitations. Plaintiff moved for partial summary judgment. The court converted defendant's motion to dismiss to one for summary judgment pursuant to N.C.R. Civ. P. 12(c), and in granting defendant's motion, the trial court made no findings of fact and stated in pertinent part:

It appears to the court that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the motion of the plaintiff for summary judgment on the issue of the authority of the Chairman of the Employment Security Commission to discharge plaintiff pursuant to G.S. § 126-5(e) is hereby denied; that the motion of the defendant for summary judgment on the issues of personal service and statute of limitations are hereby denied; that the motion of the defendant

for summary judgment on the issue of state constitutional violations is hereby allowed; and that the motion of defendant for summary judgment on the issue of the authority of the Chairman of the Employment Security Commission to discharge plaintiff pursuant to G.S. § 126-5(e) is hereby allowed.

The trial court thereupon dismissed the action with costs taxed to plaintiff. As is evident, the order gives no indication of which argument(s) advanced by the defendant in her motion to dismiss was the basis of its ruling in her favor.

Plaintiff does not allege error as to the dismissal of his constitutional claims. In his only assignment of error, plaintiff contends that the trial court erred in granting summary judgment to defendant because Duncan, as chairman of the ESC, did not have legal authority to discharge him. Plaintiff contends that only the governor had authority to discharge him. Plaintiff points out the governor is the official who designates exempt positions in the Department of Commerce, pursuant to N.C. Gen. Stat. § 126-5(d), from which the ESC receives administrative oversight, and

[a]n exempt employee may be transferred, demoted, or *separated from his position by the department head authorized to designate the exempt position* except:

(1) When an employee who has the minimum service requirements described in subsection (c)(1) above but less than 10 years of cumulative service in subject positions prior to placement in an exempt position is removed from an exempt position, for reasons other than just cause, the employee shall have priority to any position that becomes available for which the employee is qualified, according to rules and regulations regulating and defining priority as promulgated by the State Personnel Commission; or

(2) When an employee who has 10 years or more cumulative service, including the immediately preceding 12 months, in subject positions prior to placement in an exempt position is removed from an exempt position, for reasons other than just cause, the employee shall be reassigned to a subject position within the same department or agency, or if necessary within another agency, and within a 35 mile radius of the exempt position, at the same grade

and salary, including all across-the-board increases since placement in the position designated as exempt, as his most recent subject position.

N.C. Gen. Stat. § 126-5(e) (1991) (emphasis added). Plaintiff does not contend that he met the requirements of N.C. Gen. Stat. § 126-5(e)(1) or (2). However, because the governor designates exempt positions in the Department of Commerce, plaintiff argues that he is the only "department head" who could have "separated" him from his position under the authority granted in N.C. Gen. Stat. § 126-5(e).

In response to plaintiff's assignment of error, defendant argues: (1) plaintiff has not stated a cause of action because no statute allows an employee who is exempt from the State Personnel Act a cause of action challenging his termination; (2) defendant is protected by sovereign immunity; (3) plaintiff was separated from his employment as a result of the elimination of his position based on the North Carolina Government Performance Audit Committee ("GPAC") recommendations; and (4) the State Personnel Act does not limit the authority to discharge exempt policymakers solely to the governor. Defendant asserted (1) and (2), as listed above, in her motion to dismiss before the trial court; however, the 17 August 1998 order does not indicate that they were considered by the trial court. Also, defendant did not assert in her motion before the trial court that plaintiff was separated from employment as a result of GPAC recommendations. Accordingly, we will not consider defendant's arguments (1), (2) and (3) as listed above, and our inquiry will focus on whether or not Duncan had authority to terminate plaintiff from his exempt policy-making position with the ESC pursuant to N.C. Gen. Stat. § 126-5(e).

The general rule in statutory construction is that "[a] statute must be construed as written."

Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein. . . .

When the section dealing with a specific matter is clear and understandable on its face, it requires no construction.

27 Strong's North Carolina Index 4th, *Statutes* § 28 (1994) (footnotes omitted). Our review of N.C. Gen. Stat. § 126-5(e) indicates that this section is not clear when read alone. In order to determine who may

transfer, demote, or separate an exempt employee pursuant to N.C. Gen. Stat. § 126-5(e), one must first determine (1) who is the "department head" over the subject employee and (2) is that department head "authorized to designate the exempt position" in which the subject employee is employed. Accordingly, we must determine plaintiff's department head who could "designate the exempt position" in which he was employed. Plaintiff was dismissed in 1993 and we shall therefore examine the relevant statutes as of that date.

The State Personnel Act provides that a "policymaking position" is "a position delegated with the authority to impose the final decision as to a settled course of action to be followed within a department, agency, or division." N.C. Gen. Stat. § 126-5(b) (1991). Except for certain specified provisions, such as compensation and equal employment opportunity, the State Personnel Act does not apply to "[e]mployees in policymaking positions designated as exempt pursuant to G.S. 126-5(d)." N.C. Gen. Stat. § 126-5(c)(3) (1991). Exempt policymaking positions are designated either by the governor or elected department heads:

The Governor may designate as exempt policymaking positions, as provided below, in each of the following departments:

a. Department of Administration;

b. Department of Commerce;

c. Department of Correction;

d. Department of Crime Control and Public Safety;

e. Department of Cultural Resources;

f. Department of Human Resources;

g. Department of Environment, Health, and Natural Resources;

h. Department of Revenue; and

i. Department of Transportation.

The Secretary of State, the Auditor, the Treasurer, the Attorney General, the Superintendent of Public Instruction, the Commissioner of Agriculture, the Commissioner of Insurance, and the Labor Commissioner may designate as exempt policymaking positions, as provided below, in their respective offices.

N.C. Gen. Stat. § 126-5(d)(1) (Cum. Supp. 1992). "The rationale for creating exempt positions, positions exempt from the protection afforded by the civil service statute, was to allow the governor to employ top level state employees on an at-will basis, and to reposition these employees as he felt necessary in order to further the agenda of the administration." *Stott v. Haworth*, 916 F.2d 134, 142 (4th Cir. 1990). The parties agree that plaintiff's position was designated policymaking exempt as part of the Department of Commerce. N.C. Gen. Stat. § 126-5(d)(1) does not indicate that cabinet department heads, who are appointed by the governor, can designate exempt policymaking positions. Therefore, while the term "department head" as used in N.C. Gen. Stat. § 126-5(e) clearly refers to those elected department heads identified in § 126-5(d)(1), a plain reading of the statute indicates that it does not refer to cabinet department heads because they do not have the authority to designate exempt positions. It also indicates that the governor is not referred to in N.C. Gen. Stat. § 126-5(e) because although he designates cabinet department exempt policymaking positions, he is not a "department head."

The North Carolina Constitution grants the governor the executive power of the state. N.C. Const. art. III, § 1. As the holder of this power, the governor is the chief executive officer of the state and is head of the executive branch of government. Chapter 143B of our General Statutes, entitled "Executive Organization Act of 1973," states that except where the context clearly requires otherwise, the term "head of department" means "head of one of the principal State departments." N.C. Gen. Stat. § 143B-3 (1990). Chapter 143A, entitled "State Government Reorganization" indicates that department heads, except for those elected officials who are department heads and are also constitutional officers, are Cabinet members appointed by the governor:

> Any provisions of law to the contrary notwithstanding, and subject to the provisions of the Constitution of the State of North Carolina, the head of a principal department, except those departments headed by elected officials who are constitutional officers, shall be appointed by the Governor and serve at his pleasure. . . .

N.C. Gen. Stat. § 143A-9 (1983). Thus, it is abundantly clear that while the governor appoints certain department heads, and others are elected by the people, the governor is not categorized as a "department head" in our General Statutes in the ordinary or technical meaning of the term.

CARRINGTON v. BROWN

[136 N.C. App. 554 (2000)]

If read strictly, the reference to department heads in N.C. Gen. Stat. § 126-5(e) would include only "elected" department heads identified in section (d), since elected department heads are the only "department heads" who designate exempt positions pursuant to N.C. Gen. Stat. § 126-5(d)(1). Under that interpretation, no one would have the authority to transfer, demote, or separate exempt employees in positions designated as policymaking exempt by the governor, since the governor is not a "department head." This result would be impracticable—certainly the legislature did not intend that no one would have the authority to separate these employees since the State Personnel Commission's policies regarding separation of employees is not applicable to exempt policymaking positions. *See* N.C. Gen. Stat. § 126-5(c) (Cum. Supp. 1992). This impracticable result leads us to hold that N.C. Gen. Stat. § 126-5(e) is ambiguous and therefore subject to interpretation for legislative intent.

> An ambiguity justifying the interpretation of a statute is not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined. The courts regard an ambiguity to exist where the legislature has enacted two or more provisions or statutes which appear to be inconsistent. There is also authority for the rule that uncertainty as to the meaning of a statute may arise from the fact that giving a literal interpretation to the words would lead to such unreasonable, unjust, impracticable, or absurd consequences as to compel a conviction that they could not have been intended by the legislature.

73 Am. Jur. 2d *Statutes* § 195 (1974) (footnotes omitted). "Where a literal interpretation of the language of a statute would lead to absurd results and contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded." 27 Strong's North Carolina Index 4th *Statutes* § 35 (1994). Legislative intent is to be determined by

> ". . . appropriate means and *indicia, such as the purposes appearing from the statute taken as a whole,* the phraseology, the words ordinary or technical, *the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes in pari materia,* the preamble, the title, *and other like means. . . .*" Other *indicia* considered by this Court in determining legislative intent are the legislative history

of an act and *the circumstances surrounding its adoption,* earlier statutes on the same subject, the common law as it was understood at the time of the enactment of the statute, and previous interpretations of the same or similar statutes.

*State v. Green,* 348 N.C. 588, 596, 502 S.E.2d 819, 824 (1998), *cert. denied,* 525 U.S. 1111, 142 L. Ed. 2d 783 (1999) (emphasis in original) *(citing State v. Partlow,* 91 N.C. 550, 552 (1884); *In re Banks,* 295 N.C. 236, 239-40, 244 S.E.2d 386, 388-89 (1978) (citations omitted)).

Viewing N.C. Gen. Stat. § 126-5 as a whole gives further direction as to whom the term "department head" refers to in section (e) of the statute. In order to reassign an exempt employee pursuant to N.C. Gen. Stat. § 126-5(e)(1) or (e)(2), a "department head"

is authorized to use existing budgeted positions within his department in order to carry out the provisions of subsection (e) of this section. If it is necessary to meet the requirements of subsection (e) of this section, a department head may use salary reserve funds authorized for his department.

N.C. Gen. Stat. § 126-5(f) (1991). Clearly, this referral to "department head" cannot refer to the governor as he is not the head of a cabinet department who would control the use of salary reserve funds for the department.

N.C. Gen. Stat. § 126-5(d) also provides in pertinent part:

(2) Number.—The number of policymaking positions designated as exempt in each department or office listed in subsection (d)(1), except the Department of Commerce, shall be limited to one and two-tenths percent (1.2%) of the number of full-time positions in the department or office, or 30 positions, whichever is greater. The Governor may designate 85 policymaking positions as exempt in the Department of Economic and Community Development. *Provided, however, that the Governor or elected department head may request that additional policymaking positions be designated as exempt. . . .*

. . .

(5) Creation, Transfer, or Reorganization.—*The Governor or elected department head may designate as exempt a policy-*

*making position that is created or transferred to a different department, or is located in a department in which reorganization has occurred,* after May 1 of the year in which the oath of office is administered to the Governor. The designation must be made in a letter to the State Personnel Director, the Speaker of the North Carolina House of Representatives, and the President of the North Carolina Senate within 120 days after such position is created, transferred, or in which reorganization has occurred.

(6) Reversal.—Subsequent to the designation of a policymaking position as exempt as hereinabove provided, the status of the position may be reversed and made subject to the provisions of this Chapter *by the Governor or by an elected department head* in a letter to the State Personnel Director, the Speaker of the North Carolina House of Representatives, and the President of the North Carolina Senate.

N.C. Gen. Stat. § 126-5(d)(2), (5), (6) (Cum. Supp. 1992) (emphasis added). Just as it did in N.C. Gen. Stat. § 126-5(d) subsections (2), (5) and (6), if the General Assembly had meant to allow only the governor to transfer, demote, or separate employees in exempt positions in cabinet departments, we believe it would have specifically used the term "governor" in N.C. Gen. Stat. § 126-5(e). Also, by the provisions of N.C. Gen. Stat. § 126-5(d)(2), it is apparent that the governor could designate hundreds, potentially thousands, of exempt positions at the time plaintiff's position was designated as exempt. If we interpreted N.C. Gen. Stat. § 126-5(e) as plaintiff contends it should be, the result would be a serious intrusion into the administration and operation of the executive branch of North Carolina government. The governor would be forced to manage departments in which he appoints officials for that exact duty, and he would be required to make hundreds, possibly thousands, of individual transfer, demotion, and separation decisions for employees in positions which he designated as exempt. This would be an extraordinary burden on him in light of his duties as governor.

Examining the law as it existed and was construed at the time of plaintiff's dismissal, it is apparent that the governor did not interpret N.C. Gen. Stat. § 126-5 as plaintiff contends. As stated by Governor Hunt in his testimony in plaintiff's federal case:

[D]epartment heads have the responsibility for their departments. The Governor cannot possibly go down and be making

decisions about hiring and firing and promoting and that sort of thing. The system won't work if you try to do that. So I depend on my department heads and agency heads to do that.

Apparently, the governor relied on the ESC Chairman to fill this duty in regards to plaintiff as plaintiff was specifically informed that he would "serve at the pleasure of the Chairman of the Employment Security Commission" in the letter informing him that his position had been designated as policymaking exempt by the governor under N.C. Gen. Stat. § 126-5.

Other statutes *in pari materia* indicate that department heads make personnel decisions in their departments, including the hiring and dismissal of employees. Chapter 126 of the General Statutes of North Carolina, entitled "State Personnel System," states that it has the "intent and purpose . . . to establish for the government of the State a system of personnel administration under the Governor, based on accepted principles of personnel administration and applying the best methods as evolved in government and industry." N.C. Gen. Stat. § 126-1 (1991). Other than N.C. Gen. Stat. § 126-5, the authority of department heads in regards to exempt positions is not discussed any further in the State Personnel Act. However, as to the power of department heads in regards to employees in their department, Chapter 143B, "Executive Organization Act of 1973," provides that department heads have the following powers and duties:

(a) Assignment of Functions.—Except as otherwise provided by this Chapter, the head of each principal State department may assign or reassign any function vested in him or in his department to any subordinate officer or employee of his department.

. . .

(c) Department Staffs.—The head of each principal State department may establish necessary subordinate positions within his department, make appointments to those positions, and remove persons appointed to those positions, all within the limitations of appropriations and subject to the State Personnel Act. All employees within a principal State department shall be under the supervision, direction, and control of the head of that department. The head of each principal State department may establish or abolish positions, transfer officers and employees between positions, and change the duties, titles, and compensa-

tion of existing offices and positions as he deems necessary for the efficient functioning of the department, subject to the State Personnel Act and the limitations of available appropriations. . . .

. . .

(e) Departmental Management Functions.—All management functions of a principal State department shall be performed by or under the direction and supervision of the head of that principal State department. Management functions shall include planning, organizing, staffing, directing, coordinating, reporting, and budgeting.

. . .

(j) Departmental Rules and Policies.—The head of each principal State department and the Director of the Office of State Personnel may adopt:

. . .

> (2) Rules, approved by the Governor, to govern the management of the department, which shall include the functions of planning, organizing, *staffing*, directing, coordinating, reporting, budgeting, and budget preparation which affect private rights or procedures available to the public;

> (3) *Policies, consistent with law and with rules established by the Governor and with rules of the State Personnel Commission, which reflect internal management procedures within the department.* . . .

N.C. Gen. Stat. § 143B-10 (1990) (emphasis added). N.C. Gen. Stat. § 143A-8, entitled "Internal organization of departments; allocation and reallocation of duties and functions; limitations" provides that the governor "shall cause the administrative organization of each department to be examined with a view to promoting economy and efficiency" and "may reorganize and organize the principal;" however, the department head is given legal custody of all books, papers, documents and other records of the department and is responsible for the preparation and presentation of the department budget request which shall include all funds requested and all receipts expected for all elements of the department. N.C. Gen. Stat. § 143A-8 (1983). These statutes clearly provide that a department head is given all authority

to manage the department which he or she heads, including the authority to make staffing decisions, while the governor only oversees the administration of a department.

We note that the ESC is not a state department but is administratively overseen by the North Carolina Department of Commerce. The ESC consists of seven members who are appointed by the governor, who has the power to designate the member who shall act as chairman. N.C. Gen. Stat. § 96-3 (1991). The ESC has the duty to administer Employment Security Law as promulgated in Chapter 96 of the North Carolina General Statutes and has the "power and authority to adopt, amend, or rescind such rules and regulations, to *employ such persons*, make such expenditures, require such reports, make such investigations, and take such other action as it deems necessary or suitable in the administration of [chapter 96]." N.C. Gen. Stat. § 96-4(a) (1991) (emphasis added). This section goes on to provide that the chairman of the ESC

> except as otherwise provided by the Commission, be vested with all authority of the Commission, including the authority to conduct hearings and make decisions and determinations, when the Commission is not in session and shall execute all orders, rules and regulations established by said Commission.

N.C. Gen. Stat. § 96-4(a). Thus, the executive authority of the chairman of the ESC is comparable to that of a department head as identified in Chapter 143 in that she is given authority to employ persons in order to fulfill the duties of the ESC. We can therefore infer that the ESC Chairman has the corresponding authority to separate employees employed within the ESC.

Our review of the appropriate statutes indicates that the legislative intent as to the "department head" identified in § 126-5(e) is the official who has executive and managerial authority over the department in which the exempt policymaking position is designated. While this term clearly refers to elected department heads, it does not refer to the governor. The governor may designate exempt positions, but it is the individual who has authority to make personnel decisions in the department or unit in which the employee in the exempt position is employed who may "transfer, demote, or separate" the employee pursuant to N.C. Gen. Stat. § 126-5(e). Cabinet department heads have this authority in their respective departments. Because the Chairman of the ESC had the authority to staff and make personnel decisions in the ESC, we hold that she had authority to dismiss plain-

tiff from his policymaking position within the ESC pursuant to N.C. Gen. Stat. § 126-5(e).

Summary judgment is the device whereby judgment is rendered if the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. N.C.R. Civ. P. 56. No issues of any material fact exist, and based on our holding, we conclude that the defendant was entitled to judgment as a matter of law. Due to our holding, we need not reach defendant's cross-assignments of error. The order of the trial court is affirmed.

Affirmed.

Judges GREENE and WALKER concur.