STATE OF NORTH CAROLINA v. ROY LEE CHILDERS, DEFENDANT-APPELLANT

No. COA01-1350

(Filed 3 December 2002)

1. Gambling; Taxation— ad valorem taxes—discovered property provision—illegal gaming machines

The trial court did not err by presenting the charge of possession of illegal gaming machines to the jury even though defendant contends the law under N.C.G.S. § 105-312(e) does not require that the machines actually be listed for ad valorem property tax purposes prior to 31 January 2000, because: (1) the machines seized were not installed, in operation, and available for play until 1 October 2000, almost three months after the 30 June 2000 deadline provided under N.C.G.S. § 14-306.1(a)(1); (2) county tax records showed that the machines were not listed for tax purposes until 28 September 2000 which was not by 31 January 2000; and (3) defendant's use of the discovered property provision under N.C.G.S. § 105-312(e) to legitimate activity prohibited by N.C.G.S. § 14-306.1(a)(1) is contrary to its plain meaning and the legislature's intent.

2. Arrest— warrantless—probable cause—illegal gaming machines

The trial court did not err in an illegal possession of video gaming machines and assault with a firearm on a law enforcement officer case by admitting the State's exhibits even though defendant contends they were tainted by defendant's warrantless arrest for which the arresting officers allegedly lacked probable cause, because given the information obtained from a restaurant's lessee about the pertinent machines in the restaurant, observation of the machines' presence in the restaurant on the day of defendant's arrest, and a detective's knowledge that defendant failed to register the machines with the sheriff's department, the officers had ample evidence to reasonably assume that a crime was being committed.

**3. Firearms and Other Weapons— assault with firearm on law enforcement officer—jury instructions—defendant's right to defend himself—pointing of firearm**

The trial court did not err by failing to give jury instructions that defendant had a right to defend himself with regard to an unlawful arrest and that the firearm he possessed at the time of his arrest was required to be pointed at or toward the alleged victims to find defendant guilty of assault with a firearm on a law enforcement officer, because: (1) the evidence did not support defendant's contention that he was subjected to an unlawful arrest; and (2) the State did not need to prove that he pointed a firearm at a law enforcement officer but instead needed to prove that defendant put on a show of force or violence sufficient to put a person of reasonable firmness in fear of immediate physical threat.

**4. Evidence— exclusion—defendant's forgetfulness, hearing problem, and diminished capacity—invited error**

The trial court did not err in an illegal possession of video gaming machines and assault with a firearm on a law enforcement officer case by excluding evidence regarding defendant's forgetfulness, hearing problem, and diminished capacity, because: (1) assault with a firearm on a law enforcement officer is a general intent crime for which diminished capacity is not a defense; and (2) any error by the trial court in giving the jury an instruction characterizing an assault as a willful, overt act, for which the excluded evidence could have served as a defense, was invited by defendant when he did not object to the use of the word willful in the jury instruction and in fact encouraged its inclusion.

**5. Gambling; Firearms and Other Weapons— possession of illegal gaming machines—assault with a firearm on a law enforcement officer—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charges of possession of illegal gaming machines and assault with a firearm on a law enforcement officer, because there was substantial evidence to support each charge.

**6. Criminal Law— no formal arraignment on record—purpose achieved**

The trial court did not err in an illegal possession of video gaming machines and assault with a firearm on a law enforce-

STATE v. CHILDERS

[154 N.C. App. 375 (2002)]

ment officer case by failing to grant defendant a new trial based upon the alleged material prejudice he suffered in not having a formal arraignment on the record, because: (1) the purpose of the arraignment had been achieved when defendant was fully aware of the charge against him; and (2) the record showed that although defendant was not formally arraigned, the charges against him were joined together, defendant pled not guilty to those charges, and defendant proceeded to trial as if he had been arraigned.

Appeal by defendant from judgments entered 16 May 2001 by Judge Dennis J. Winner in Rutherford County Superior Court. Heard in the Court of Appeals 14 August 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Richard G. Sowerby, for the State.*

*Deaton & Biggers, PLLC, by W. Robinson Deaton, Jr. and Brian D. Gulden, for defendant-appellant.*

BRYANT, Judge.

Defendant appeals his conviction for illegal possession of video gaming machines and assault with a firearm on a law enforcement officer. On 3 October 2000, law enforcement officers located and seized three video gaming machines at the Childers' Family Restaurant [the restaurant] in Rutherford County, North Carolina. Following a confrontation with officers, defendant was arrested in conjunction with the seizure of the gaming machines. The State indicted defendant on three counts of allowing, placing, or keeping a video gaming machine in operation and eight counts of assault with a firearm on a law enforcement officer.

Following a trial by jury, defendant was convicted on all counts. The assault convictions were subsequently consolidated for sentencing. The trial court sentenced defendant to three consecutive, six-to-eight-month suspended terms of imprisonment for the illegal gaming conviction and a suspended twenty-four-to-thirty-eight-month term for the assault convictions. The court placed defendant on probation, under the condition that he serve a six-month active prison term. Defendant now appeals.

Defendant presents the following assignments of error: (I) the trial court erred in presenting the charge of possession of illegal gam-

ing machines to the jury because the law does not require that the machines actually be listed for *ad valorem* property tax purposes prior to 31 January 2000; (II) the trial court erred in allowing the State's exhibits in that they were tainted by defendant's unlawful arrest; (III) the trial court erred in its instructions to the jury; (IV) the trial court erred in excluding evidence of defendant's forgetfulness, hearing problem and diminished capacity; (V) the trial court erred in denying defendant's motion to dismiss; and (VI) the defendant is entitled to a new trial because he was materially prejudiced by not having a formal arraignment.

## I.

**[1]** Defendant first argues that the trial court erred in presenting the possession of illegal video gaming machines charge to the jury, based upon his interpretation of the discovered-property provision of the North Carolina taxation statutes, N.C.G.S. § 105-312(e) (2001).

Section 14-306.1(a)(1), the statute under which defendant was convicted, prohibits the operation and possession of video gaming machines, unless those machines were "[l]awfully in operation, and available for play, within this State on or before June 30, 2000; and . . . [l]isted in this State by January 31, 2000 for ad valorem taxation for the 2000-2001 tax year. . . ." N.C.G.S. § 14-306.1(a)(1) (2001) (effective 1 October 2000).

The "discovered-property" provision, relied upon by defendant, states the following:

> When property is discovered, the taxpayer's original abstract (if one was submitted) may be corrected or a new abstract may be prepared to reflect the discovery. If a new abstract is prepared, it may be filed with the abstracts that were submitted during the regular listing period, or it may be filed separately with abstracts designated "Late Listings." Regardless of how filed, the listing shall have the same force and effect as if it had been submitted during the regular listing period.

N.C.G.S. § 105-312(e). The "listing period" is defined as the month of January. N.C.G.S. § 105-307(a) (2001). According to defendant's application of the discovered-property provision, a taxpayer may list gaming machines after 31 January 2000, the end of the 2000-2001 listing period, and have the listing deemed filed by 31 January 2000, avoiding criminal liability under N.C.G.S. § 14-306.1(a)(1). Thus, defendant argues, for a video gaming machine to be legal, it did

not actually have to be listed for *ad valorem* tax purposes by 31 January 2000. We disagree.

"Where, as here, one statute deals with a particular situation in detail, while another statute deals with it in general and comprehensive terms, the particular statute will be construed as controlling absent a clear legislative intent to the contrary." *Merritt v. Edwards Ridge*, 323 N.C. 330, 337, 372 S.E.2d 559, 563 (1988) (citation omitted). Furthermore, when statutory language is "clear and unambiguous," it must be given "its plain and definite meaning[.]" *Carrington v. Brown*, 136 N.C. App. 554, 558, 525 S.E.2d 230, 234 (quoting 27 Strong's North Carolina Index 4th, *Statutes* § 28 (1994)), *review denied*, 352 N.C. 147, 543 S.E.2d 892 (2000).

Section 14-306.1(a)(1) is a particularized, unambiguous statute, criminalizing a particular act—operation of video gaming machines, unless they were in operation "on or before" 30 June 2000 and listed for *ad valorem* tax purposes "by" 31 January 2000. Criminal statute § 14-306.1(a)(1) became effective on 1 October 2000, long after the enactment of subsection 105-312(e). It in no way references subsection 105-312(e), its "*as if* it had been submitted" language or any other similarly permissive language.

In contrast, by its plain language and context, subsection 105-312(e) is clearly a portion of a general taxation statute concerning only a tax assessor's duty to list, assess and tax discovered property. *See* N.C.G.S. § 105-312(b), (d), and (e). "Discovered property" is "all property not properly listed during the regular listing period. . . ." N.C.G.S. § 105-312(b). To valuate discovered property, the assessor must treat the property as if it was listed before the end of the listing period with the taxpayer's remaining property. *See* N.C.G.S. § 105-312(b), (d). Therefore, "[s]ubsection (e) is a tool for the tax collector, not a tool for the property owner, and cannot be imported into unambiguous legislation to defeat the purpose of such legislation by legitimizing machines which were not listed by January 31, 2000." *Henderson Amusement, Inc. v. Good*, 172 F. Supp. 2d 751, 764 (W.D.N.C. 2001) (examining the same issue and following the same line of reasoning in a 42 U.S.C. § 1983 case), *abrogation recognized on other grounds, Gantt v. Whitaker*, 203 F. Supp. 2d 503 (M.D.N.C. 2002).[1]

---

1. In *Henderson*, a North Carolina federal district court held in a § 1983 action that a sheriff who seized video gaming machines via the authority granted by § 14-306.1(a)(1) was immune from suit in his official capacity based on the Eleventh amendment and due to his status as a state official. 172 F. Supp. 2d at 763. In an

Evidence presented at trial shows that defendant's actions clearly ran afoul of the unambiguous language and purpose of N.C.G.S. § 14-306.1(a)(1): Trial testimony revealed that the machines seized from the restaurant were not installed, in operation and available for play until 1 October 2000—almost three months after the 30 June 2000 deadline, and county tax records showed that the machines were not listed for tax purposes until 28 September 2000—certainly not "by" 31 January 2000. Defendant's use of the discovered property provision to legitimize activity prohibited by § 14-306.1(a)(1) is contrary to its plain meaning and the legislature's intent. We therefore conclude that the trial court did not err in submitting the illegal gaming machine charge to the jury. Accordingly, this assignment of error is overruled.

## II.

[2] Defendant next argues that it was error for the trial court to admit the State's exhibits because they were tainted by defendant's warrantless arrest, for which the arresting officers did not have probable cause. We disagree.

In North Carolina, "[a]n officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense in the officer's presence." N.C.G.S. § 15A-401(b)(1) (2001). In making an arrest without a warrant, it is not essential that the officer show an offense has actually been committed, it is only necessary that the officer show he has reasonable grounds to believe an offense has been committed. *State v. Crawford*, 125 N.C. App. 279, 282, 480 S.E.2d 422, 424 (1997).

Based upon prior knowledge of the machines' presence at the restaurant, Sheriff Department Detective David Petty and several other officers visited the location on 3 October 2000. The officers learned from the restaurant's lessee, Glady Whiteside, that the machines located therein were not hers, that she had informed defendant that she did not want them in the restaurant and that tickets from the machines could be redeemed at defendant's store,

alternative holding, the court addressed arguments by the plaintiff concerning the discovered property provision very similar to the contentions of defendant in the case *sub judice. Id.* at 763-64. We find that the federal court's reasoning and interpretation of the North Carolina statutes, while certainly not controlling authority, is sound and instructive to the issues presented by the present case. *Henderson* was later abrogated by another federal court's ruling in *Gantt*, finding that a sheriff is a local, not state, official. *Gantt*, 203 F. Supp. 2d at 509.

Childers' Truck Stop [the store], located beside the restaurant. Detective Petty and other officers proceeded to the store where they met defendant.

Given the information obtained from Whiteside, observation of the machines' presence in the restaurant on the day of defendant's arrest and Detective Petty's knowledge that defendant failed to register the machines with the Sheriff's Department, the officers had ample evidence to reasonably assume that a crime was being committed. Because the officers possessed such probable cause, defendant's warrantless arrest was proper. This assignment of error is therefore overruled.

## III.

[3] Defendant next assigns error to the instructions given to the jury. In particular, defendant contends that the jury should have been instructed (1) that defendant had a right to defend himself with regards to an unlawful arrest; (2) that the firearm he possessed at the time of his arrest was required to be pointed at or toward the alleged victims to find him guilty of assault with a firearm on a law enforcement officer.

"[I]f a request is made for a jury instruction which is correct in itself and supported by evidence, the trial court must give the instruction at least in substance." *State v. Duncan*, 136 N.C. App. 515, 517, 524 S.E.2d 808, 810 (2000) (citations and internal quotation marks omitted). First, we find no error in the court's decision not to instruct the jury that defendant could defend himself from an unlawful arrest. As noted in our discussion of the previous assignment of error, the evidence did not support defendant's contention that he was subjected to an unlawful arrest, and therefore the court was not obligated to give the instruction.

Second, we also conclude that defendant was not entitled to the above listed instruction as to the assault charge. The evidence at trial established that: After their conversation with Whiteside, Detective Petty and the other officers proceeded to the store where they encountered defendant. Upon inquiry by the officers, defendant denied ownership of the gaming machines in question. Detective Perry informed defendant that the machines were to be seized and someone, either Whiteside or defendant, would be arrested. Defendant told the officers to arrest him, and later reached under the store's counter, "slammed down" a revolver and challenged the officers to "[c]ome behind the counter and get [him]." While the officers

yelled for defendant to put the gun down and come out from behind the counter, defendant cursed the officers and the Sheriff's Department and "was very belligerent, [] was waving the gun around the entire time [the officers] were dealing with him." Eventually, the officers gained control and subsequently arrested defendant.

To establish that a defendant assaulted a law enforcement officer with a firearm, the State must prove: (1) an assault; (2) with a firearm; (3) on a law enforcement officer; (4) while the officer is engaged in the performance of his or her duties. N.C.G.S. § 14-34.5(a) (2001). An assault is "an overt act or attempt, with force and violence, to do some immediate physical injury to the person of another, which *show of force or violence* must be sufficient to put a person of reasonable firmness in fear of immediate physical injury." *State v. Haynesworth*, 146 N.C. App. 523, 529, 553 S.E.2d 103, 108 (2001) (emphasis added).

The State need not prove, as defendant contends, that he pointed a firearm at a law enforcement officer; rather, the State need only prove that defendant put on a show of force or violence sufficient to put a person of reasonable firmness in fear of immediate physical injury. This, the correct statement of the law corresponds to the trial court's instructions and the evidence presented at trial. Because the assault instruction requested by defendant misapprehends the law, the trial court did not err in its failure to give the instruction. Accordingly, this assignment of error is overruled.

## IV.

[4] Defendant next argues that the trial court erred in excluding evidence regarding defendant's forgetfulness, hearing problem and diminished capacity. Defendant contends that by instructing the jury that the defendant is guilty of an assault if he commits a willful, overt act, the trial court transformed the offense from a general intent to a specific intent crime for which the excluded evidence of his ailments could have served as a defense. We disagree.

Assault with a firearm upon a law enforcement officer is a general intent crime, for which diminished capacity is not a defense. *State v. Page*, 346 N.C. 689, 700, 488 S.E.2d 225, 232 (1997) (citations omitted). Therefore, the trial court's exclusion of evidence serving as a defense to the assault was not error.

Furthermore, assuming *arguendo* that the trial court's characterization of an assault as a wilful, overt act was error, it was invited by

defendant. Defendant did not object to the use of the word "willful" in the jury instruction. In fact, defendant encouraged its inclusion, stating to the trial court, "I think you should use the word willful." When the trial court responded that it would use "willful and overt act," defendant replied, "That's fine." Because defendant invited what he now argues was error, he cannot contend that the alleged error entitles him to relief. *See State v. Cagle*, 346 N.C. 497, 509, 488 S.E.2d 535, 544 (1997) (noting that invited errors are not subject to review). Accordingly, this assignment of error is overruled.

## V.

**[5]** Defendant next argues that the trial court erred in denying his motion to dismiss as there was insufficient evidence to support both his convictions for possession of the gaming machines and assault with a firearm on a law enforcement officer. Our review of the facts presented at trial, the pertinent portions of which are set out in the above assignments of error, reveals that there was substantial evidence supporting both of defendant's convictions. *See State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (holding that convictions must be supported by substantial evidence to withstand motion to dismiss). Consequently, this assignment of error is overruled.

## VI.

**[6]** Defendant's final argument is that the trial court erred in failing to grant him a new trial based upon the material prejudice he suffered in not having a formal arraignment on the record. We disagree.

"[F]ailure of the record to show a formal arraignment does not entitle defendant to a new trial where the record indicates that defendant was tried as if he had been arraigned and had entered a plea of not guilty, as is the situation here." *State v. Benfield*, 55 N.C. App. 380, 382, 285 S.E.2d 299, 301 (1982). Given the facts of the present case, there is no doubt that the purpose of an arraignment has been achieved—"defendant was fully aware of the charge against him [and] that he was in nowise prejudiced by the omission of a formal arraignment—if indeed it was omitted." *Id.* (citation and internal quotation marks omitted).

Here, the record shows that defendant was not formally arraigned, but the charges against him were joined together, that he did indeed plead not guilty to those charges and that he then proceeded to trial as if he had been arraigned. Given the events surrounding defendant's plea, he is not entitled to a new trial based upon

the absence of a formal arraignment on the record. This assignment of error is overruled.

For the reasons stated above, we find defendant received a fair trial, free from error.

NO ERROR.

Judges McGEE and McCULLOUGH concur.