UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HENDERSON AMUSEMENT,
INCORPORATED; KENNETH BRANCH;
KEVIN BRANCH, d/b/a Blue Ridge
Enterprises; BELL MUSIC MACHINE
CORPORATION; HARRY HONEYCUTT,
d/b/a Games, Sales and Leasing;
TINA PEAKE, d/b/a Legends Billiards;
RICHARD ALLEN McGEE, d/b/a 221
Express Lube,

> No. 01-2462

        *Plaintiffs-Appellants,*

v.

DANIEL J. GOOD, Sheriff of
Rutherford County, North Carolina,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Max O. Cogburn, Magistrate Judge.
(CA-00-256-1-C)

Argued: December 3, 2002

Decided: March 10, 2003

Before MICHAEL and GREGORY, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Winford Robinson Deaton, Jr., LAW OFFICES OF DEATON & BIGGERS, P.L.L.C., Shelby, North Carolina, for Appellants. Scott Douglas MacLatchie, WOMBLE, CARLYLE, SANDRIDGE & RICE, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Brian D. Gulden, LAW OFFICES OF DEATON & BIGGERS, P.L.L.C., Shelby, North Carolina, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Henderson Amusement, Inc. ("Henderson Amusement")[1] brought this action against Daniel J. Good ("Sheriff Good"), Sheriff of Rutherford County, North Carolina, in both his personal and official capacities. Henderson Amusement alleges, *inter alia*, that Good violated its Fourth Amendment rights when he seized its video gaming machines pursuant to a newly enacted North Carolina state law. Sheriff Good moved for summary judgment, claiming that he was entitled to qualified immunity and Eleventh Amendment immunity. The district court granted summary judgment for Good on both grounds, and this appeal followed. For the reasons that follow, we affirm the district court's determination that Sheriff Good is not liable in either his personal or official capacity.

---

[1]Kenneth Branch, Bell Music Corporation, Harry Honeycutt, Tina Peake, and Richard Allen McGee joined Henderson Amusement in this action. For ease of reference, however, we refer only to Henderson Amusement as prosecuting this litigation.

I.

In July 2000, the North Carolina General Assembly passed a law requiring owners of video gaming machines to comply with certain registration requirements before they can lawfully operate their machines within the State. Under the statute, it is unlawful to operate a video gaming machine in North Carolina unless the machine has been: (1) lawfully operating "and available for play, within [North Carolina] on or before June 30, 2000"; and (2) "listed in [North Carolina] by January 31, 2000 for ad valorem taxation for the 2000-2001 tax year. . . ." N.C. Gen. Laws § 14-306.1(a)(1)(a & b). To ensure that video gaming owners have complied with the provisions of this statute, § 14-306.1(e) requires owners to have registered their machines with the sheriff of the county in which the machine is located no later than October 1, 2000. *See* N.C. Gen. Laws § 14-306.1(e). Video gaming machines that fail to satisfy the requirements of § 14-306.1 may be seized by the sheriff and destroyed pursuant to N.C. Gen. Laws § 14-298.[2]

On or before September 30, 2000, Henderson Amusement, a North Carolina corporation located in Cleveland County, attempted to register its video gaming machines with Sheriff Good. Sheriff Good refused to register Henderson Amusement's machines because they were not listed by January 31, 2000, for ad valorem taxation. Shortly thereafter, Sheriff Good seized the machines pursuant to § 14-298 because the machines were contraband under North Carolina state law.

Henderson Amusement then filed an action against Good in North Carolina state court. Henderson Amusement's complaint is predicated, in part, on its belief that it is entitled to damages under 42

---

[2]North Carolina General Laws section 14-298 provides, in pertinent part:

> All sheriffs and officers of police are hereby authorized and directed, on information made to them on oath that any . . . video game machine prohibited to be used by . . . G.S. 14-306.1, is in the possession or use of any person within the limits of their jurisdiction, to destroy the same by every means in their power. . . .

U.S.C. § 1983 because Sheriff Good's seizure of its video gaming machines was unreasonable under the Fourth Amendment.[3] Sheriff Good removed the case to federal district court, and shortly thereafter moved for summary judgment, arguing that he was entitled to qualified immunity and Eleventh Amendment immunity against Henderson Amusement's claims.

On November 2, 2001, Magistrate Judge Max Cogburn issued a written opinion, granting summary judgment for Sheriff Good both on the qualified immunity and Eleventh Amendment grounds.[4] Magistrate Judge Cogburn declined, however, to exercise supplemental jurisdiction over Henderson Amusement's state law claims and dismissed those claims without prejudice. This appeal followed.

## II.

We review the district court's decision to grant summary judgment on qualified immunity grounds *de novo*. *See Haulbrook v. Michelin N. Am.*, 225 F.3d 696, 702 (4th Cir. 2001); *Pritchett v. Alford*, 973 F.2d 307 (4th Cir. 1992). Summary judgment is appropriate only if "there is no genuine issue of fact as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a party is entitled to summary judgment, the evidence is viewed in the light most favorable to the non-moving party. *Myers v. Finkle*, 950 F.3d 165, 167 (4th Cir. 1991).

## III.

Qualified immunity shields government officials performing discretionary functions from civil liability to the extent that their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To assess the merits of a claim of qualified immunity, this Court employs a two-step analysis. First, the

---

[3]The Supreme Court has clarifed that corporations are entitled to some Fourth Amendment protection against unreasonable searches and seizures. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 353 (1977).

[4]After Good removed the case to federal district court, both parties consented to Magistrate Jurisdiction over the matter.

Court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotation omitted). If the Court determines that the plaintiff has failed to allege a violation of an actual constitutional right, the inquiry ends. If, however, the plaintiff has properly alleged the violation of a constitutional right, the Court must then determine "whether that right was clearly established at the time of the alleged violation." *Id.*

In this case, Henderson Amusement argues that Sheriff Good violated its Fourth Amendment rights when he seized Henderson Amusement's video gaming machines pursuant to § 14-298. Specifically, Henderson Amusement alleges that Sheriff Good subjected it to an unconstitutional seizure by failing to interpret properly the registration requirements of § 14-306.1. Our first inquiry, therefore, must be to determine whether Henderson Amusement has alleged the violation of a constitutional right.

Under the Fourth Amendment, a seizure occurs when there is "some meaningful interference with an individual's possessory interest in that property." *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992). The Fourth Amendment, applicable to the States through the Fourteenth Amendment, *see Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961), provides in relevant part: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. As this Court has explained, "subject to limited exceptions . . ., the general rule is that 'Fourth Amendment seizures are "reasonable" only if based on probable cause.'" *Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000) (internal citation omitted). *See also Freeman v. City of Dallas*, 242 F.3d 642, 651-52 (5th Cir. 2001) ("Whether the Fourth Amendment was in fact violated . . . requires determining if the seizure was reasonable." (internal quotation omitted)). "Probable cause, in turn, is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Henderson*, 223 F.3d at 271 (internal citation omitted).

The parties do not dispute that Sheriff Good "seized" the video gaming machines within the meaning of the Fourth Amendment. The

issue is whether Sheriff Good's seizure of the video gaming machine violates the constraints of the Fourth Amendment. To this point, Henderson Amusement argues that Sheriff Good misinterpreted the registration requirements contained in § 14-306.1 and therefore unreasonably seized its video gaming machines in violation of the Fourth Amendment. Under Henderson Amusement's interpretation of § 14-306.1, video gaming machines did not actually have to be listed for ad valorem taxation by January 31, 2000, despite the apparent statutory requirement. In support of this argument, Henderson Amusement points to the "discovered property" provision contained in § 105-312 of the North Carolina General Laws, which permits a county tax assessor to list, assess, and tax all property not properly listed for ad valorem taxation during the regular listing period. Based on this statutory provision, Henderson Amusement argues that its failure to list its machines for ad valorem taxation by § 14-306.1's tax filing deadline did not render the machines contraband because the "discovered property" statute permits the tax listing to be filed at a later date. For the following reasons, we find this argument devoid of merit.

"[W]hen statutory language is 'clear and unambiguous,' it must be given 'its plain and definite meaning.'" *State v. Childers*, 572 S.E.2d 207, 210 (N.C. App. 2002) (internal citation omitted). In noting the "plain language" of § 14-306.1, one North Carolina appellate court has observed: "Section 14-306.1(a)(1) is a particularized, unambiguous statute, criminalizing a particular act — operation of video gaming machines, unless they were in operation 'on or before [ ] June [30,] 2000 and listed for ad valorem tax purposes 'by' [ ] January [31,] 2000." *Id.* This Court's reading of § 14-306.1 is in accord with the North Carolina appellate court's interpretation of the same. The "plain meaning" of § 14-306.1(a) requires this Court to conclude that under § 14-306.1(a)(1), a video gaming machine is contraband in North Carolina unless "such machine was (a) [l]awfully in operation, and available for play, within [North Carolina] on or before June 30, 2000; *and* (b) listed in this State *by* January 31, 2000 for ad valorem taxation for the 2000-2001 tax year. . . ." *Id.* (emphasis added).

Henderson Amusement attempts to dissuade this Court from applying the unambiguous tax filing requirements of § 14-306.1 by arguing that the "discovered property" provision contained in § 15-312(e) is

applicable to the registration of its machines. However, Henderson Amusement's reliance on § 15-312(e) is misplaced. Section 15-312(e) states that "[w]hen property is discovered, the taxpayer's original abstract (if one was submitted) may be corrected or a new abstract may be prepared to reflect the discovery. . . . [T]he listing shall have the same force and effect as if it had been submitted during the regular listing period." One North Carolina court interpreting this provision has explained that § 105-312(e) "is clearly a portion of a general taxation statute concerning only a tax assessor's duty to list, assess, and tax discovered property." *Childers*, 572 S.E.2d at 210. To this point, subsection (b) of the same statutory provision states in pertinent part: "It shall be the duty of the *assessor* to see that all property not properly listed during the regular listing period be listed, assessed, and taxed. . . ." N.C. Gen. Laws § 15-312(b) (emphasis added). Therefore, we find that under North Carolina law, owners of video gaming machines not listed for ad valorem taxation by the January 31, 2000 deadline cannot avail themselves of § 15-312's "discovered property" provision. *See id.* As the *Childers* court explained, § 15-312 "'is a tool for the tax collector, not a tool for the property owner, and cannot be imported into unambiguous legislation to defeat the purpose of such legislation be legitimizing machines which were not listed by January 31, 2000.'" (internal citation omitted)). The absence of any reference to the "discovered property" statute in § 14-306.1 is additional evidence of the North Carolina General Assembly's intent to require owners of video gaming machines to comply with the deadlines imposed in § 14-306.1. Accordingly, Henderson Amusement's failure to list its video gaming machines for ad valorem taxation by January 31, 2000, mandates the conclusion that its machines were contraband as defined by § 14-306.1.

Because this Court concludes that Henderson Amusement's video gaming machines were contraband under the North Carolina law, we also conclude that Sheriff Good had probable cause to seize the machines pursuant to § 14-298. Section 14-298 states in relevant part: "All sheriffs and officers of police are hereby authorized and directed on information made to them on oath that . . . any video gaming machine prohibited to be used by G.S. 14-306 or G.S. 14-306.1, is in the possession or use of any person within the limits of their jurisdiction, to destroy the same by every means in their power. . . ." Under § 14-298, Sheriff Good was authorized to seize *any* video gaming

machine that failed to comply with the registration requirements of § 14-306.1. Because Henderson Amusement does not challenge the constitutionality of seizures made pursuant to § 14-298 nor the registration requirements contained in § 14-306.1, we do not address those issues. Instead, we hold that Sheriff Good's seizure of Henderson Amusement's video gaming machines was made pursuant to a presumptively valid state law, and therefore, his actions did not constitute an unreasonable seizure. *See, e.g.*, *Coonts v. Potts*, ___ F.3d ___, 02-1267, 2003 WL 23153, at *5 (8th Cir. Jan. 3, 2003) (holding that because appellants did not properly challenge the constitutionality of the state statutes at issue, "the deputies conducted the levy consistent with [a] presumptively valid state law, and their actions did not" violate the Fourth Amendment). Accordingly, because Henderson Amusement has not alleged the violation of a constitutional right, its § 1983 claim fails.

Even assuming *arguendo* that Henderson Amusement could allege a violation of its Fourth Amendment rights, Sheriff Good would still be entitled to qualified immunity because Henderson Amusement's right to be free from seizures made pursuant to § 14-298 was not clearly established at the time of this incident. A right is clearly established "such that an officer's conduct transgresses a bright line when the law has 'been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state.'" *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998) (internal quotation and citation omitted). However, if the contours of the right have not been "authoritatively decided" by the Supreme Court, Court of Appeals, or state supreme court, the law enforcement officer is entitled to qualified immunity. *See S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 265 (4th Cir. 1998). In other words, in order to determine whether Sheriff Good's actions were reasonable for qualified immunity purposes, this Court must consider the information known by Good at the time of the seizures. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When Henderson Amusement attempted to register its video gaming machines with Sheriff Good, the machines had not been listed for ad valorem taxation as required by § 14-306.1. Sheriff Good refused to register the machines and seized them pursuant to § 14-298 because they were contraband under North Carolina state law. When

Sheriff Good seized the machines, there was no reason to suspect that § 14-298 suffered any constitutional deficiency. On this point, neither the Supreme Court, this Court, nor the North Carolina Supreme Court had authoritatively addressed the constitutionality of seizures made pursuant to §§ 14-306.1 and 14-298. Hence, Sheriff Good did not violate any clearly established law when he seized Henderson Amusement's video gaming machines pursuant to a newly enacted North Carolina state law.[5] For this reason, the doctrine of qualified immunity would shield Sheriff Good from personal liability on this federal claim.

As explained above, however, we conclude that Henderson Amusement has not alleged any violation of its Fourth Amendment rights under the facts and circumstances in this case. Accordingly, because Sheriff Good did not deprive Henderson Amusement of a Fourth Amendment right when he seized the video gaming machines, Henderson Amusement's § 1983 claim against Sheriff Good in his personal and official capacities must fail. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 420 (4th Cir. 1996) (explaining that before a governmental entity can be held liable under § 1983 in its official capacity, there must be a deprivation of a federal right).

IV.

Because we conclude that Henderson Amusement's § 1983 claim against Sheriff Good in his personal capacity fails because Henderson Amusement has not adequately alleged the deprivation of a constitutional right, it follows that the complaint does not state a claim against the sheriff in his official capacity. We therefore do not reach the issue of whether the Eleventh Amendment bars the claim against Sheriff Good in his official capacity. *See Republican Party v. Martin*, 980

---

[5]In July 2002, the Western District for the District of North Carolina reviewed a constitutional challenge to §§ 14-298 and 14-306.1 and concluded that these provisions violated the Equal Protection and Due Process Clauses of the Constitution. *See Helton v. Good*, 208 F. Supp. 2d 597 (W.D.N.C. 2002). This July 2002 decision, which is in the process of being appealed, was issued two years after Sheriff Good seized the video gaming machines and therefore cannot provide a basis of knowledge of constitutional deficiency attributable to Good.

F.2d 943, 952 (4th Cir. 1992) (reviewing court may affirm the district court for any reason in the record). Accordingly, we affirm the judgment of the district court only to the extent that it concluded that Henderson Amusement failed to establish a valid claim under § 1983.

*AFFIRMED*