**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4639

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

KEVIN TERRELL HARVEY,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. N. Carlton Tilley, Jr., Senior District Judge. (1:16-cr-00094-NCT-1)

Submitted: June 8, 2018                          Decided: August 15, 2018

Before WILKINSON and DIAZ, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Craig M. Cooley, COOLEY LAW OFFICE, Cary, North Carolina, for Appellant. John P. Cronan, Acting Assistant Attorney General, Matthew S. Minor, Deputy Assistant Attorney General, Thomas E. Booth, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Matthew G.T. Martin, United States Attorney, Greensboro, North Carolina, Kimberly F. Davis, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Winston-Salem, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After a four-day jury trial, Kevin Harvey was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Harvey now appeals, arguing that the district court erred in denying his motion to suppress two firearms seized by the police. Harvey contends that the weapons were obtained after the police violated his Fourth Amendment rights by entering his home without a warrant or exigent circumstances and failing to adhere to the knock-and-announce rule. For the reasons that follow, we affirm the district court's judgment.

I.

On July 11, 2015, Karen Harvey filed an affidavit and petition for involuntary commitment in Forsyth County, North Carolina. The affidavit stated that her son, Kevin Harvey ("Harvey") was mentally ill and a substance abuser dangerous to himself and others. It claimed that Harvey had not been taking his depression medication, had been diagnosed with multiple personality disorder, had attacked his brother, threatened to kill his family if they called the police, put a gun to his chest threatening to kill himself, and was currently in possession of two guns. A state court magistrate judge issued an involuntary commitment order that same day, directing police to take Harvey into custody within twenty-four hours.

Later that morning, Officers Larry Blevins and Cecelia Shaffer were dispatched to Harvey's apartment complex to execute the magistrate judge's order. As they arrived on the scene, they saw Harvey walking up the steps to his apartment. Blevins followed Harvey

2

while Shaffer went to the rear of the building to prevent any escape out the back. Shaffer soon encountered Harvey trying to exit through a rear window but directed him to return to the front of the building. Officer Cody Robertson then arrived at the scene and warned Shaffer that, according to Harvey's brother, Harvey was armed and wished to kill the police. Shaffer ran to the front of the apartment to warn her partner.

Meanwhile, Blevins knocked on the front door and announced that he was with the police department. Harvey briefly opened the door while keeping it chained and tried to close it again when Blevins said the two men needed to talk. Blevins placed his foot inside the doorway and his shoulder against the door, and when Shaffer got to the front of the building, she assisted Blevins in forcing the door open. As the officers struggled to open the door, Harvey pulled a gun from his pocket. Seeing the weapon, Blevins backed away from the door shouting "gun, gun, gun," and then fired his own weapon three times, hitting Harvey in the arm. In response, Harvey fired one round before running to the back of his apartment and jumping out of a second-floor window, where he was subsequently arrested by Officer Robertson. Police recovered two pistols: one on Harvey's person and another on the ground outside his apartment.

Before trial, Harvey moved to suppress evidence of the two weapons seized by police. The district court denied the motion, finding that Officer Blevins complied with the knock-and-announce rule and that the involuntary commitment order and its attending exigent circumstances justified the forcible entry under the emergency-aid exception. On appeal, Harvey disputes both of these conclusions, arguing that the district court impermissibly considered the commitment order to be the functional equivalent of an arrest

3

warrant. Harvey adds that even if this premise were true, the police would still have to identify the specific reason for their request to speak with him, which Officer Blevins failed to do. We do not need to decide these issues, though, because the intervening-crime doctrine permits the admission of the evidence seized here.

## II.

When considering the district court's denial of a motion to suppress, we "review the district court's legal determinations *de novo* and its factual determinations for clear error." *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010). Where a defendant's motion to suppress has been denied, we "construe the evidence in the light most favorable to the government." *Id.*

Exigent circumstances at the time of entry can justify an otherwise unlawful warrantless search of a home. *United States v. Taylor*, 624 F.3d 626, 631 (4th Cir. 2010) (citing *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). But regardless of whether the warrantless entry here was justified, the subsequent seizure of Harvey's weapons was permitted under the intervening-crime doctrine. If a suspect's response to an illegal search or seizure is, on its own, a new and distinct criminal act, then it is constitutionally permissible to admit evidence seized in connection with the new crime. *See United States v. Sprinkle*, 106 F.3d 613, 619 (4th Cir. 1997).

In North Carolina, assault by pointing a gun occurs when "any person . . . point[s] any gun or pistol at any person, either in fun or otherwise, whether such gun or pistol be loaded or not loaded." N.C.G.S. § 14-34. And while assault by pointing a gun is normally

4

a misdemeanor under state law, it is a felony when the victim is a "law enforcement officer, probation officer, or parole officer while the officer is in the performance of his or her duties." *Id.* § 14-34.5(a). Nor does one need to point a firearm directly at an officer; it is enough that the defendant "put on a show of force . . . sufficient to put a person of reasonable firmness in fear of immediate physical injury." *State v. Childers*, 572 S.E.2d 207, 212 (N.C. Ct. App. 2002).

Once Officer Blevins placed his foot inside Harvey's doorway, Harvey responded by pulling his gun. Even if Harvey only intended for Officer Blevins to "get scared" and "back off the door," the act still constituted a felony under North Carolina law. Because this was a new, distinct crime, it purged the taint of any illegal entry and permitted Harvey's subsequent arrest. *See Sprinkle*, 106 F.3d at 619–20. And because the arrest for Harvey's new, distinct crime was lawful, evidence seized in a search incident to that lawful arrest is admissible. *Id.*

### III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*

5